Evelyn B. GAIN, Respondent,

v.

Charles B. DORWARD, Appellant.

No. 23438.

Kansas City Court of Appeals.

Missouri.

April 2, 1962.

John L. Sheridan, C. Thomas Carr, Sheridan, Baty, Markey, Saunders, Edwards & Carr, Earl J. Boughan, Kansas City, for appellant.

Walter A. Raymond, Raymond, West & Cochrane, Kansas City, for respondent.

BROADDUS, Judge.

This is an action for damages for personal injuries. Plaintiff recovered a verdict and judgment for $10,000 and defendant has appealed.

On May 19, 1955, about 10:45 A.M. plaintiff was on the northeast corner of the intersection of 75th and Troost in Kansas City, Missouri, on the way to the office of her dentist for some routine dental work. Troost Avenue runs north and south and has four traffic lanes and traffic at this intersection is controlled by automatic electric signal lights. The day was clear and bright and the weather was warm. The streets were paved with cement and the pavement was dry.

As plaintiff reached the aforesaid position the traffic light for east and west traffic on 75th Street was red and she waited for the light to change. She saw one automobile standing at the southwest corner of said intersection near the south curb waiting for the light to change. Said automobile was giving no signal of an intention to make a left turn. When the traffic light turned green for east and west traffic plaintiff started walking west in the pedestrian lane on the north side of 75th Street. As she was approaching the center of Troost Avenue an automobile was coming south very fast in the traffic lane for southbound traffic first west of the center line and she gave attention to that automobile.

As she reached the center of the traffic lane immediately east of the center line of Troost Avenue the defendant made a left turn to go north on Troost in the lane next to the center. Defendant did not see plaintiff until almost upon her and his car struck her with such force that it knocked her out of the pedestrian lane and prone to the ground five feet north of the north line of the pedestrian lane in which she had been walking. Defendant sounded no horn or other warning of his approach. Defendant's automobile was moving slowly and there was nothing to prevent him stopping or swerving to the right as the east traffic lane was clear. His brakes, steering gear and tires were in good condition and he could stop his car under the circumstances in four feet.

We will set forth the evidence relating to the nature and extent of the injuries sustained by plaintiff as we discuss defendant's third contention—that the verdict is excessive.

■ Defendant's first contention is that the court erred in giving on behalf of plaintiff Instruction No. 3, which dealt with the measure of damages. It reads as follows:

"The Court instructs the jury that if you find the issues for plaintiff and against the defendant on the evidence and under the instructions of the Court, you should assess her damages at such sum as you believe and find from the evidence will fairly and reasonably compensate her for the injuries, if any, sustained by her as shown by the evidence; and in assessing such damages you may take into consideration the physical injury, if any, inflicted; the bodily pain, if any, and mental anguish, if any, which she has endured and suffered and which she is reasonably certain to endure and suffer in the future; the character and extent of her injuries and disabilities, if any, and whether they are temporary or permanent."

■ Defendant urges that the instruction is too broad, and does not limit and confine the damages for the injuries sustained by plaintiff as a direct result of the automobile accident of May 19, 1955. Similar instructions have been uniformly approved by the decisions of the appellate courts of this State. Among those many cases are Oldham v. Standard Oil Co., 15 S.W.2d 899 (Mo.App.); Brunk v. Hamilton-Brown Shoe Co., 334 Mo. 517, 66 S.W.2d 903. Those authorities hold that an instruction on the measure of damages in a personal injury case is not erroneous because it is general if it does not misstate the law, and that, if defendant considers it might be misleading, it is his duty to ask instructions excluding elements of damage not proper to be considered, and otherwise limiting the damages to be allowed.

The two cases cited by defendant are not in point. The first was a contract action with no evidence to support the instruction given. The second was a fraud case which did not limit the damages to the difference in the value of the property at the time purchased and the value it would have had had the representation been true.

■ Defendant also contends that the trial court erred in overruling his objec-

tions to the following remarks made by plaintiff's counsel in his closing argument.

"* * * and she is going to have this tooth trouble. Certainly until they have to be pulled and artificial teeth are put in. And I want to say to you that artificial teeth are something to be reckoned with. I remember one time in a lawsuit here in Kansas City, the complaint was made that they allowed the lady too much money.

"Mr. Russell: Object to this form or argument.

"Mr. Raymond: It is an anecdote.

"Mr. Russell: I fail to see the relevancy to that.

"The Court: I don't know what he is going to say.

"Mr. Russell: I think the mere mention of it is prejudicial.

"Mr. Raymond: I don't know who wrote the opinion for the Court of Appeals for cracking a set of plates, and I know the problem, to him who contends store teeth are as good as natural teeth holds complete disillusionment.

"Mr. Russell: Objection to that for the record as being highly prejudicial for the jury, he is quoting hearsay evidence to this jury, which is improper, immaterial and irrelevant to any issue in this case.

"The Court: Overruled."

The argument complained of does not attempt to inform the jury of the result of the lawsuit referred to nor does it mention any amount. It does not purport to recite the ruling or language of the court, but shows it is only the personal opinion of Counsel for it says: "I know the problem, etc."

In the recent case of Kiger v. Terminal Railroad Ass'n of St. Louis, 311 S.W.2d 5, 11, our Supreme Court said: "In con-

sidering contentions of error in relation to the argument of counsel we have said, 'The trial court, however, is allowed large discretion in permitting or restraining argument and as to the manner in which improper argument is to be restrained or its prejudicial effect purged or cleansed, and the appellate court will not interfere unless it clearly appears that the trial court has abused its discretion. * * * It is recognized that in the stress of summing up the evidence and analyzing its probative effect in tending to support or refute the fact involved in a sharply contested factual issue, trial counsel's ardent advocacy sometimes impels him to go beyond the limits of fair argument; but when the trial court does not consider such instances sufficient to require a new trial, this court is inclined to defer to the trial court's opinion in these matters, unless upon a full examination of the record it appears that the improper argument was so prejudicial, inflammatory and outside the record as to effect the result on the merits.' "

Under the circumstances we are not inclined to hold that the trial court abused its discretion in permitting the argument complained of.

■ Defendant's final point is that the verdict is excessive. In considering this question we are required to view the evidence in the light most favorable to plaintiff.

As stated plaintiff was struck by defendant's car with such force as to throw her clear out of the pedestrian lane and cause her to fall flat on the pavement about five feet north of the north line of said pedestrian lane. She was helped to an ambulance and taken to the emergency room of Menorah Hospital. She was shocked, dazed, confused and only partly conscious. Being unable to reach her family doctor, Dr. Lyddon, Dr. Jacob who had treated some other member of her family was called.

Plaintiff was 35 years of age at the time of her injury on May 19, 1955. She had previously suffered from some nervousness resulting from the worry and responsibility of caring for an epileptic daughter. Her back at times grew tired and sometimes ached from lifting and carrying her epileptic daughter. She had a congenital anomaly of the fifth lumbar vertebra and a certain weakness making it more susceptible to injury and more difficult to heal. She had suffered from headaches from time to time previously. She also had some Hypertrophic arthritis of the dorsal spine. This condition was not giving plaintiff any trouble before the accident and she did not even know it existed.

Plaintiff suffered a severe blow to her head causing a cerebral concussion. This was evidenced by dizziness, severe headaches, a Nystagmus or inability to focus her eyes to either left or right without flickering, nausea and floating-off spells. Her sense of balance was affected causing her to lose her sense of equilibrium. Plaintiff's four upper front teeth were chipped and fractured. Sometime within a week after the accident plaintiff went to her dentist Dr. Jarvis N. Williams, for treatment of her four front upper teeth. At that time her mouth was hurting and said teeth were very sore, sensitive and painful; they were loosened and showed evidence of some chipping, fracturing, breaking and cracking. Dr. Williams found it necessary to put a jacket on one of said teeth and as to the likelihood of having to put jackets on the other three he said: "It is my opinion they definitely will." By jacketing is meant grinding the tooth down to a stub and then putting a porcelain jacket over it. There is always a very good probability that these teeth, the nerves will die at some time, and could at any time, have to be extracted." The teeth are more fragile and susceptible to injury and more sensitive than before the accident. The witness had seen plaintiff's teeth three days before the accident in process of some routine dental work and testified the injury and damage to the teeth was caused by a trauma since he had seen her. Some teeth other than the four front teeth also showed some chipping. A jolt, shock, blow on the chin without a direct blow on the teeth or mouth could cause the damage to plaintiff's teeth.

She suffered multiple contusions of her left shoulder, left arm, left chest wall including her left breast, left hip, left thigh, left knee with abrasions on the left knee, left leg, left arm. Her left breast was very miserable and painful for which she received a series of diathermy treatments. The arthritic deposits in her dorsal spine were aggravated and made very painful and disabling. The fifth lumbar vertebra condition was aggravated by the trauma causing tenderness and pain over the lower dorsal and lumbar area. She can hardly move without her back hurting very badly. Her nervous condition was aggravated and made much worse. She now has those floating-off spells, crying spells, gets hysterical and has lack of coordination and balance. Her headaches were aggravated and became more frequent and more painful. She blacks out occasionally. She has done some temporary work under great difficulty. Additional symptoms of nervousness appeared such as floating-away spells and depression. Her condition is worse, requires more frequent and more difficult treatment since the accident. Her increased nervousness is permanent and she was still under the care of a physician and still needed treatment at the time of the trial, almost six years after the accident. At the time of the trial plaintiff was taking librium, 5 milligrams, as a tranquilizer three times a day for nervousness upon her doctor's prescription. On the 11th of February, 1961, shortly before trial Dr. Jacob made a complete examination of plaintiff. His findings were briefly as follows: At that time she was still complaining of having pains in her left forearm on the outside; she still had pains on both sides, along the

entire spine which causes aching there when she is moving about; her sense of balance is disturbed and during the past year she blacked out several times and she has been extremely nervous since the accident. Upon examination he found: There was pain on moving her head backward and forward and to both sides, particularly on the right with a catch and popping noticeable on active as well as passive movements; tenderness on palpation of the extensor muscles of the left forearm; tenderness on palpation of the mid and lower dorsal area and the muscles on both sides of the spine in this area were somewhat spastic or contracted; tenderness of the superscapular area of the back; tenderness over the lower lumbar area and pain on extreme flexion and extension and the muscles in the lower lumbar spine were also spastic, tight and contracted. Spastic or tight muscles indicate pain. On examination of the nervous system he found a questionable deposit of Romberg although nystagmus was not then present. This indicated some equilibrium or coordination difficulty. Dr. Jacob then testified that considering the fact it had been approximately six years since plaintiff's injury he would consider the condition he found on this last examination to be permanent. His findings were based on subjective symptoms verified by objective symptoms he personally observed. He further testified that the conditions he found and described "I think that was caused by trauma." He attributed the pain and tenderness in plaintiff's neck to aggravation of the arthritic changes in her spine. He personally knew she had no such disabling condition before her accident.

In determining whether a verdict for personal injuries is excessive each case must be decided on its own peculiar facts. Myers v. Karchmer, 313 S.W.2d 697 (Mo.Sup.). As stated in the case of Burr v. Kansas City Public Service Co., 365 Mo. 115, 276 S.W.2d, 120, 127: "Due regard should be given to the purchasing power of the dollar, to the rule of reasonable uniformity of awards for similar injuries and to the fact that the jury and the trial judge were in a better position than this court to measure an award of reasonable compensation, as well as to the fact that the trial court has approved the verdict in question."

Under the instant circumstances, we have concluded that we would not be justified in holding the verdict excessive. The judgment is affirmed. All concur.