Q. Byrum HURST, Jr. *v.* Margaret HURST

CA 80-12                                       602 S.W. 2d 137

Court of Appeals of Arkansas
Opinion delivered June 18, 1980
Released for publication July 8, 1980

*John T. Harmon*, of *Harmon & Madden*, and *Thomas M. Carpenter*, of *Lessenberry & Carpenter*, for appellant.

*House, Holmes & Jewell*, by: *Annie E. Owings*, for appellee.

Steele Hays, Judge. Appellant brings this appeal seeking to reverse a modification by the Chancellor of a separation agreement in a divorce suit entered into between the parties on August 30, 1978. The separation agreement was incorporated by reference in a decree of divorce entered September 1, 1978.

On August 28, 1978, the appellant wrote a letter to the appellee confirming an oral agreement (purportedly supplemental to the separation agreement), which recited that the appellee could use the membership in the Hot Springs Country Club, particularly for the children's recreation (though not for her own personal benefits); stating that appellant would assist appellee with additional financial payments of not less than $50.00 nor more than $100.00 per

month to help with "utility bills, *etc.*"; that appellee would have the use of a gasoline credit card and reciting other provisions not essential to this opinion.

The essential elements of the separation agreement provided that the appellant would pay $125.00 per week to appellee for the support of three minor children, together with temporary alimony in the sum of $539.85 per month until the parties' residence could be sold, at which time the child support would be $300.00 and alimony would be $500.00 per month so long as appellee remained unmarried. The agreement contained provisions for a sale of the parties' residence with the appellee to receive not less than $15,000.00 as her equity; and the appellant would pay "all bills incurred by the parties to date" and would be responsible for "any medical or dental bills incurred by the minor children". Other provisions are not particularly relevant to the issues on appeal.

In December, 1978, appellant wrote appellee that after January 1, he would no longer pay any amounts to appellee except as ordered in the divorce decree. On February 26, 1979, the appellant notified the appellee by letter that he was exercising his right under the agreement to purchase appellee's interest in the home and announcing that he would tender a cashier's check in the sum of $15,000.00 on March 1, 1979. The letter stated that appellee would have until April 15 to vacate the dwelling.

On February 27, 1979, appellee filed a petition alleging that at the time the property settlement agreement was entered into the appellee was induced to sign the agreement against her will and that appellant represented to appellee that he was willing to undertake obligations beyond those in the agreement but that subsequently the appellant denied any further obligation; that the written agreement approved by the court did not correctly reflect the agreement between the parties and was entered into as a result of fraud. Alternatively, appellee sought modification of the terms of the decree and claimed an arrearage in alimony payments of $3,-239.10. The appellant denied the allegations of the petition and by counter-petition asked for a specific enforcement of

the sale of appellee's interest in the home to appellant upon his tender of the sum of $15,000.00.

The case was tried on May 28, 1979, at the close of which the Chancellor made an extensive and detailed entry on the docket finding that appellee had failed to show that the agreement was procured by fraud but found that the agreement was modified by the letter of August 28, 1978 and by "other oral statements"; that the alimony payments of $539.85 were satisfied by the mortgage payments and consequently no arrearage in alimony existed; that appellee should sign a quitclaim deed to the dwelling and receive $15,000.00 therefor and appellant would pay $200.00 per month child support, tuition for a private school, $75.00 a month for utility bills and $75.00 per month for gasoline bills, both sums to be considered as child support. The court directed appellee's attorney to prepare the decree and fixed a fee of $3,600.00 for appellee's attorneys to be paid one-half by appellant and one-half by appellee.

The modified decree was prepared, approved and signed by the Chancellor on June 29, 1979, and entered nunc pro tunc as of May 28, 1979. Notice of appeal was filed by appellant on August 1, 1979.

Before dealing with appellant's arguments on appeal, appellee contends that the notice of appeal was not timely filed. The argument is that the judgment was entered on the docket on May 28, 1979 and inasmuch as the notice of appeal was not filed until August 1, 1979, considerably more than thirty days had elapsed between the docket entry and the notice of appeal. Appellee's brief cites *Cranna* v. *Long*, 225 Ark. 153, 279 S.W. 2d 828 (1955) stating that the time for filing notice of appeal runs from the date on which the judgment is filed for entry with the clerk. However, in oral argument, appellee contends that where, as here, the court enters its order on the docket at the close of a hearing, which counsel for both sides observed, then the time for filing notice of appeal runs from the entry on the docket and not from the time the judgment is filed with the clerk. We find the argument to be without merit. In the first place, the court's own docket entry recites that appellee's counsel would prepare the

decree thus challenging the argument that both sides were under the impression that the docket entry was to be the final and only judgment in the case. Secondly, the decision in *Cranna* v. *Long* states plainly that the crucial date is the date the judgment is *filed with the clerk.* Rule 3(b) of the Rules of Appellate Procedure, which became effective on July 1, 1979, recites: "An appeal shall be taken by filing a notice of appeal with the clerk of the court which entered the judgment, decree or order from which the appeal is taken," Rule 4(a) recites, in part, that a notice of appeal "shall be filed within thirty days from the entry of the judgment, decree or order appealed from." *Cranna* v. *Long, supra,* although decided in 1955, interpreted Section 2 of Act 555 of 1953 (containing language almost identical to that of Rule 4[a]) by construing the words *"entry of the judgment or decree appealed from"* as meaning the filing of the judgment *with the clerk* for entry. To the same effect see *Northly* v. *Northly*, 223 Ark. 751, 268 S.W. 2d 357 (1954). There is nothing to indicate any departure from the well-established view of fixing the time for filing notice of appeal from the date on which the judgment, decree or order is filed with the clerk was intended by the language of Rule 3. Thus, appellee's arguments that the appeal should be dismissed are lacking in merit.

Returning to appellant's arguments on appeal, two points are asserted: first, that the Chancellor erred in modifying the decree and two, that the Chancellor erred in awarding an excessive fee to appellee's counsel.

I.

The appellant contends that the agreement between the parties was an independent contract incorporated into the decree of divorce and approved as such by the court, that under the rule announced in *Lively* v. *Lively*, 222 Ark. 501 (1953) and other decisions of the Arkansas Supreme Court, an agreement of this type cannot be modified or that if it is not an independent contract, its incorporation in the decree makes it modifiable only on a showing of changed circumstances, which he insists are not present. See also *Pryor* v. *Pryor*, 88 Ark. 302 (1908), and *Bachus* v. *Bachus*, 216 Ark. 802, 227 S.W. 2d 429 (1950). The appellee does not confront this

argument, preferring to argue that the modification was based not upon changed circumstances, but rather upon a finding that the parties themselves had modified the written agreement both verbally and in writing. We agree with appellee, in part, that some modification of the agreement was made by the parties themselves; however, the question before us is whether the Chancellor has properly modified the decree. To find his modification of the child support aspect was correct, there must be evidence in the record of changed circumstances as required by numerous decisions of the Arkansas Supreme Court.

Appellant contends that the changed circumstances which are essential to modification should be in the form of increased or decreased earnings by one parent or increased expenses by the other and while this is very often the case, nowhere do we find in the numerous decisions on the subject, that these considerations *alone* merit an increase or decrease in child support. To the contrary, the courts have considered a very wide range of circumstances in dealing with the question of modification ranging from remarriage by one parent [*Barnes* v. *Barnes*, 246 Ark. 624, 439 S.W. 2d 37 (1969)] to the absence of good faith by the father in furnishing information regarding his financial affairs (*Toebe* v. *Toebe*, 30 N.W. 2d 585). Indeed, Corpus Juris Secundum, Vol. 27(b), Section 322(1) p. 680, describes the power of the court to modify child support as being "broad":

> The *broad* powers of a court to revise and alter an order or decree concerning the support and maintenance of children, and to make new orders as the circumstances of the parent and the interests of the children may require, usually exists by reason of statute.

In short, no clearly defined set of circumstances emerges from the decisions as being essential to a modification, the decisions simply allude to the requirement that modification may be made upon changed circumstances. In some instances, as in *Haney* v. *Haney*, 235 Ark. 60, 357 S.W. 2d 196 (1962), the Supreme Court has declined the question of whether there must first be a finding of changed circumstances before the Chancery Court can modify the

amount of child support, preferring simply to weigh the increased amount allowed by the court against the degree of change. In *Haney*, the trial court had ordered an increase from $200.00 per month to $275.00 per month which the Supreme Court reduced to $225.00 upon the theory that the circumstances had not changed *that greatly*. It seems fair to say from our inspection of these decisions that when the child support has been reduced by way of modification, the Supreme Court has been apt to scrutinize the record for clear change of circumstance but less inclined where an increase in child support has occurred. This, no doubt, is attributable to the thread that runs through the entire fabric of the law, i.e., that it is the best interest of the children that must be served by the modification. *Reiter* v. *Reiter*, 225 Ark. 157, 278 S.W. 2d 644 (1955). The writers of Corpus Juris Secundum, Vol. 27(b) Section 322(2) p. 699, state that:

". . . in determining whether a provision should be modified all relevant circumstances should be considered, although *the controlling factors are the needs and the welfare of the child* or children, and the financial circumstances or ability of the parent."

Thus we conclude that the state of the law in this area may be said to be in Arkansas that the Chancery Court has broad power to modify a provision for child support where it finds a modification to be in the best interest of the children and no hard and fast rule can be laid down concerning the specific nature of the changed circumstances or the degree thereof. We regard this general statement as entirely consistent with the rule expressed in *Collie* v. *Collie*, 242 Ark. 297, 413 S.W. 2d 42 (1967), and *Shue* v. *Shue*, 162 Ark. 216 (1924), to the effect that whether a modification of child support is justified by changed circumstances is within the *sound discretion* of the Chancellor.

Turning now to the record before us in the light of the foregoing commentary, we think there is an adequate basis for the modification. In the first place it is quite clear from the testimony of both parties that repeated assurances were made by the appellant to the appellee respecting his intentions to provide for her beyond the strict letter of the separation

agreement. Numerous portions of the record support this statement. Appellant argues that such a holding would inhibit a parent from making voluntary, gratuitous contributions to the support of children and would be inimical to the welfare of dependent children of divorced parents. While this argument may have some merit in cases in which the contributions are clearly gratuitous, it overlooks the fact that in this case the contributions were not only made but were accompanied or preceded by representations to the appellee that she could expect and count on such contributions. The latter element, we believe, provides a signficant difference from those cases in which one parent simply provides voluntary contributions above those required by the decree. It must be remembered that appellant was a practicing attorney and while appellee may have had the benefit of independent legal advice, she testified: that appellant assured her during the negotiations that he "would watch out for my best interest"; that appellant prepared the pleadings and property settlement agreement; that the parties met directly and frequently during negotiations; that appellant informed her that he would give appellee and the children "much more than the court would grant us" and that if she went to court she would receive less than under the settlement agreement. She further stated that appellant assured her that he would give her "a greater amount of child support" than provided in the agreement and "more alimony than we had agreed upon."

The appellant's own testimony confirms the fact that appellee was relying on verbal assurances made to her by the appellant and that he intended that she do so, as he testified that during negotiations he told the appellee that she was receiving more benefits by negotiating with him than if she "went into court" and that he believed that to be the fact. Additionally, he testified that "I probably told her that I would continue to pay her expenses and payments to her outside the property settlement agreement." Appellant's counsel insists that such oral statements and, indeed, even the contents of the letter of August 28 were entirely gratuitous and not intended to be treated as part of the separation agreement. Such characterization is not consistent with the language of the letter itself, which is expressly supplemental to the

separation agreement. We think it clear that under all the circumstances, appellee had a right to rely on the promises made by the appellant as well as his performance thereof. The appellant's pattern of support after the agreement had been entered may be a "changed circumstance" in itself. We might also consider his abrupt change in that pattern and insistence upon limiting his support to that provided in the original agreement as changed circumstances as well.

Appellant argues that his net earnings were less than previous, hence a reduction in child support would have been in order. But that is not demonstrated in any reliable fashion. The several financial exhibits in the record reflect gross receipts by the appellant of $204,739 for the fiscal year ending June 30, 1978 and while there is admittedly some confusion as between appellant's earnings and client's accounts, it is clear that appellant withdrew amounts exceeding $4,000 per month for his own use. Significantly, nowhere did the appellant testify that his earnings were reduced, indeed, he discussed earnings not at all. In view of appellee's testimony that her expenses totalled $1,358.42, we cannot find that the amount as modified for child support constitutes an abuse of discretion by the Chancellor.

Thus, we conclude that the circumstances as a whole and the needs and best interests of the children are such that it was not error for the court to modify the child support payments as it did.

## II.

Appellant also argues that it was error for the court to allow a fee of $3,600.00 to appellee's attorneys, although appellant acknowledges that the allowance and the amount of attorney's fees are within the sound discretion of the trial court and are not subject to review except upon a showing of an abuse of discretion. *Johnson* v. *Johnson*, 240 Ark. 657, 401 S.W. 2d 213 (1966). After reviewing the record, which is sizable, and noting that the fee was equally divided between appellant and appellee, we are unable to conclude that the fee was excessive and subject to reduction. Appellant argues that $3,600.00 for a single day in court is of itself excessive.

However, interrogatories were filed, dispositions were taken, financial documents were examined, and motions for continuances and supporting briefs prepared and filed. Beyond what the record suggests in the way of time and preparation, the Supreme Court has often pointed to other factors to be considered in arriving at the determination of fees. An extensive review of fees in domestic relations cases appears in *Lytle* v. *Lytle*, 266 Ark. 128, which reaffirms that the allowance of fees is within the sound judicial discretion of the Chancellor, the exercise of which will not be disturbed on appeal in the absence of abuse. We find nothing to suggest any abuse in connection with the fee allowed and regard it as being entirely reasonable in the light of the fact that the appellant's share amounted to only $1,800.00. The final answer, obviously, is that the Chancellor was in a far better position than this court to determine the appropriate amount and it has not been demonstrated to us that any abuse of discretion is present.

There is one area in which the court below seems to have inadvertently exceeded the agreement even as modified between the parties, and that relates to the provision that "should Margaret Hurst remarry or live with an unrelated male or obtain a full-time job at least nine months a year, the $75.00 items (referring to gasoline and utilities) will be reduced by 50%." However, we note that the August 28 letter contains a provision that in the event appellee should remarry or cohabit, *all* benefits except child support would terminate, which provision was acceptable to the parties and ought not, therefore, be modified by the court. The order is modified by eliminating the quoted proviso.

Affirmed as modified.