David J. POTTER *v.* Betty POTTER

82-260                                          655 S.W.2d 382

Supreme Court of Arkansas
Opinion delivered July 5, 1983
[Rehearing denied September 19, 1983.]

40

*Mitchell, Williams, Selig, Jackson & Tucker,* by: *Jim Guy Tucker,* for appellant.

*Smith, Jernigan & Smith,* by: *Robert D. Smith, III* and *H. Vann Smith,* for appellee.

JOHN I. PURTLE, Justice. After a long and complicated trial the chancellor granted a divorce to the appellee and dismissed appellant's counterclaim for divorce. The court also divided the property in a manner which is not satisfactory to either party. Several post-trial motions for modification and/or clarification were filed by the parties. The last motion was disposed of on April 6, 1982, and on April 9, 1982, the appellant gave notice of appeal. He argues 10 grounds for reversal. The different points argued will be paraphrased and set out below. The decree will be affirmed with certain modifications.

The parties to this action were married April 9, 1971. Three children issued from the marriage. Final separation occurred in June of 1980. Appellant is an attorney in Texarkana and appellee is a school teacher. The present action was initiated by the appellee when she filed her complaint for divorce on April 17, 1980. The complaint was subsequently amended and the case was presented to the chancellor (sitting by exchange) on the merits of the different parties. The decree granted custody of the three minor children to the appellee subject to liberal and reasonable visitation rights being vested in the appellant. The decree also ordered the appellant to pay $650 per month child support and denied any alimony to the appellee. During the hearing on December 8, 1980, wherein the appellant's motion for temporary relief was heard the court discovered there was an agreement between the parties that required cessation of acquisition of marital property and debts as of June 30, 1980. It was agreed to between the parties that June 30, 1980 would be the date used for accounting of properties and debt at the final hearing. The court indicated the agreement between the parties would be recognized and approved by the court.

The long and complicated facts relating to the disposition will be set out as the points are discussed.

I

THE COURT ERRED IN AWARDING A DIVORCE

TO THE APPELLEE INSTEAD OF THE APPELLANT.

Each of the parties denied the existence of any grounds for divorce on the other party's part. On the other hand each claimed they were the injured party and were entitled to a divorce. In the present case we look only to see if there was sufficient evidence to support the court's decree granting the appellee a divorce. The appellee testified to grounds which would warrant granting her a divorce. The question presented is whether the appellee's allegations were corroborated. We have held in the past that when both parties sue for divorce, slight corroboration will support a chancellor's granting a divorce to one of the parties. In *Lockley* v. *Lockley*, 257 Ark. 603, 519 S.W.2d 52 (1975), this court made the statement:

> Of course, we have said numerous times, so numerous as to require no citation of authority, that corroboration in contested divorces need only be slight.

One witness testified that the appellant frequently kidded and joked with the appellee and that this appeared to embarrass her. The witness stated that appellee's mood changed for the worse whenever appellant appeared. Appellee testified that on one occasion appellant, while at the country club, teased her about her inability to keep a check book balanced. Another witness stated that appellant made remarks with other people present that he was going to give appellee a birthday party and invite maladjusteds and misfits in town to the party. There was also evidence of a number of heated arguments between the two. Therefore, we feel there is the necessary corroboration and in view of the fact that each party sought a divorce we do not find prejudicial error in the chancellor's awarding a divorce to the appellee.

II

THE TRIAL COURT ERRED IN FAILING TO ADJUDICATE MARITAL PROPERTY AND DEBTS AS OF JUNE 30, 1980.

The appellant argues that an agreement between the parties whereby marital property and debts would be determined as they existed on June 30, 1980 was controlling but not recognized by the chancellor at the final hearing. During this period of time the appellee incurred debts in appellant's name in the amount of $16,786.68. These debts included purchases and payments on behalf of both parties and the children. After December 8, 1980 (the date of the hearing on temporary support and allowances) the court entered a temporary order requiring appellant to pay the appellee $850 per month. During this time the appellee was allowed to live in the home at 1905 East 18th in Texarkana. Matters heard on December 8, 1980 were considered in the final hearing in this case. There was no dispute about the amount of the expenditures during the period of June 30 through December 8, 1980. The record clearly reveals that no order had been issued by the court prior to December 8, 1980. During the period of time between June 30 and December 8, 1980, the appellee received $2,250 by check from the appellant. She also incurred $512 for part of the expense of a vacation which she took in Florida. During this same period of time payments on the home were made in the amount of $2,302.68. Some of the other expenses incurred during this time were paid by the appellant in order to protect his credit. The expenditures included ordinary expenses of running a household, an automobile and keeping up membership at the country club. During this five and one-half month period the appellant paid no alimony or support as such. Considering the foregoing, we think the chancellor erred in not allowing appellant credit for the $2,250 cash advanced to the appellee during this time as well as the $512 she spent in Florida. He should also have received credit for one-half of the house payments which amount totals $1,151.34. The credits allowable to him would thus come to $3,913.34.

III

THE COURT ERRED IN AWARDING APPELLEE A GRAND PIANO AS HER SEPARATE PROPERTY.

A grand piano, which appellant purchased for $6,000, was picked out by him and the children and transported to

the home on Christmas Eve, 1979. Certainly these circumstances are in keeping with the idea that the piano was a gift to appellee. The trial court heard the parties and we generally adhere to its decision in the matter of credibility of witnesses. ARCP, Rule 52. We do this because the trial court is in a better position than this court to evaluate the credibility of the witnesses. It is not error to award the piano to the appellee as a gift from the appellant thereby creating separate property.

## IV

THE COURT ERRED IN DETERMINING THAT CERTAIN FEES WHICH THE APPELLANT HAD EARNED, WERE MARITAL PROPERTY.

Several fees are involved in this controversy. The first one is the fee in the *Mills* case.[1] The appellant had done practically all of the work on this fee prior to the time of his marriage to the appellant on April 9, 1971. The fee in the *Mills* case was contingent and was not payable until after the Arkansas Supreme Court handed down a decision on May 17, 1971. The fee and reimbursement costs amounted to $19,345.71. A portion of these funds was used to purchase 2.066 acres of land, whereon the parties subsequently constructed their dwelling house, the rest going to the purchase of a one-half interest in a 5.8 acre tract. Although the funds were traceable, the trial court held that the fee did not accrue until after the marriage. He then held that these two parcels of land were marital assets.

Other fees involved in this controversy (*Right, Hodges, McMillin-Burkett* and *Cameron*) were earned during the marriage but were set up in trust funds in order to be paid out over a period of time. The court also held that these other fees were marital property and should be divided between parties. In addition there was an individual retirement account in appellant's name, which had been created during

---

[1]*Mills Heirs* v. *Wylie*, 250 Ark. 703, 466 S.W.2d 937 (1971).

the marriage. The court also held this fund to be marital property.

It is appellant's contention that either the *Mills* fee or the other fees and the IRA should be treated as his separate property. Ark. Stat. Ann. § 34-1214 (Supp. 1981) controls the division of the property in this case. The statute states that all marital property shall be divided equally unless the court finds such a division to be inequitable, in which case the court shall make an equitable distribution. All other property shall be returned to the party who owned it prior to marriage unless the court shall make some other division that the court deems equitable. If the court fails to return the property to the party who owned it at the time of the marriage it must state in writing its basis and reasons for not doing so. Property is not deemed marital if it is acquired by gift, bequest, devise or descent; or is acquired in exchange for such property. Also, property is excluded from being classified as marital property if the parties exclude it by valid agreement. Property acquired by either spouse during the marriage carries the presumption of being marital property. The date of the acquisition is the key factor. Property acquired separately or jointly remains as such and must be divided accordingly at the time of divorce, unless the court finds it is not equitable. In some community property states there is a rebuttable presumption that property acquired during the marriage is community property even though it is taken solely in the name of one of the parties. *Thomasset* v. *Thomasset,* 122 Cal. App. 2d 116 (1954); *Fountain* v. *Maxim,* 210 Cal. 48 (1930). *Thomasset* held that separate funds remained separate unless it became impossible to trace the source of the funds. This is true even if separate funds were commingled with other funds in a common account.

The Supreme Court of New Jersey held that the earning capacity of a lawyer was not a marital asset but could be considered by the trial court in determining an "equitable" distribution of marital assets. *Stern* v. *Stern,* 66 N.J. 340 (1975). The New Jersey court also determined that accounts receivable were properly considered assets but should be reduced by accounts payable. In *Stern* it was further stated that the trial court should consider tax consequences in

making an equitable distribution of marital assets. Our court has held that a wife may be entitled to one-half of her husband's vested interest in a trust or pension plan. *Bachman* v. *Bachman,* 274 Ark. 23, 621 S.W.2d 701 (1981). We held that a trust agreement and a money-purchase pension plan were fully vested and therefore were properly considered marital property. Property such as future retirement and pension benefits is not marital property because it has not yet been acquired. *Paulsen* v. *Paulsen,* 269 Ark. 523, 601 S.W.2d 873 (1980); *Bachman* v. *Bachman, supra.*

We find that the court properly found the *Mills* fee to be marital property because it was acquired during the marriage. The IRA account is not fully distributable and was established with funds earned by the appellant, therefore, it was not proper for the trial court to treat it as marital property. In *Stout* v. *Stout,* 4 Ark. App. 266, 630 S.W.2d 53 (1982) the Arkansas Court of Appeals affirmed the trial court in holding that an IRA account belonged to the party contributing the funds to the account. The fees which have not been collected have obviously not been acquired during the marriage and fall outside the definition of marital property as defined by Ark. Stat. Ann. § 34-1214 (Supp. 1981). In holding these fees not to be marital property we do not imply that any and all accounts receivable, fees, commissions or other property not in hand on the date of the divorce will be excluded from being considered marital property. If such delayed assets are in keeping with the usual course of business or conduct there is no reason to hold they are marital property. However, if there is evidence of fraud or other intent to delay receipt of such property in order to exclude it from consideration at the time of divorce it may well be equitable to treat it as having been acquired during the marriage. Therefore, we are of the opinion that the trial court was in error, in that the IRA account and the fees which have not been collected are not marital property but are the separate property of appellant.

## V

## THE COURT ERRED IN REFUSING TO TRACE SEPARATE PROPERTY OF THE APPELLANT INTO CERTAIN TRACTS OF REAL ESTATE.

48

Tracing has been discussed to some extent under the last argument. We are persuaded that the correct formula was used in *Hancock Mutual Life Ins. Co. v. Bennett,* 133 Tex. 450 (1939), where the court stated:

> It is a well settled rule that property acquired for a consideration paid in part out of community funds and in part out of separate funds of one of the spouses is in part community and in part separate property. The two estates own such property by way of a sort of tenancy in common.

We think the appellant owns a separate interest in the lot and house in the amount of $9,656.08 which sum is directly traceable to the proceeds of the sale of his separate property owned prior to the marriage. Although Arkansas is not truly a community property state, Ark. Stat. Ann. § 34-1214 makes it so for all practical purposes when it is utilized in dissolution of marriage and distribution of assets. Both Texas and Maine have adopted the "acquired in exchange for" clause in their community property dissolution statutes. *Hancock, supra,* and *Tibbetts v. Tibbetts,* 406 A.2d 70 (Me. 1979).

## VI

### THE COURT ERRED IN GRANTING APPELLANT ONLY ONE-HALF OF THE PAYMENTS HE MADE ON THE HOUSE AFTER JUNE 30, 1980.

The court ordered the appellant to be repaid for one-half of the payments he had made on the property after June 30, 1980. We have already disposed of part of this argument by giving appellant credit for payments made during the period between June 30 and December 8, 1980. This is a mechanical procedure; we do not have the necessary figures before us to make a finding as to the exact amount owed after December 8, 1980. In fact, it appears that these payments were at least made through September of 1981 and are possibly continuing at this time. In any event we think appellant is entitled to recover one-half of the payments on

the house, including taxes and insurance, from December 8, 1980 up until the date of the sale of the property.

## VII

### THE COURT ERRED IN DETERMINING THE VALUE OF APPELLEE'S MARITAL INTEREST IN THE HILLSIDE APARTMENTS.

The appellant is the owner of two-ninths interest in the Hillside Investment Company, a partnership. The principal asset of the partnership is the Hillside Apartments. The appellee presented evidence from an appraiser, and the court found that the value of the appellant's recorded two-ninths interest amounted to $46,131.41. There was a debt against appellant's ownership in the amount of $10,290. The appellant offered testimony that the business interest of the property had a market value of $14,631.49. It is not disputed that the two-ninths interest in the Hillside Investment Company is marital property. Appellant's testimony concerning the net value of the equity in the Hillside Apartments was about $1,000 more than that of the appraiser for the appellee. The difference in the net valuations between the two is that appellant thought the value of the minority interest should be reduced by 25% whereas the court discounted the minority interest at the rate of 10%. This is a factual question and we are unable to say that the chancellor was clearly erroneous in his decision. In this case it is equitable to award appellee a money judgment for her interest in the marital property which is not susceptible to division or sale without causing both parties loss of equity.

## VIII

### THE COURT ERRED IN FINDING THAT APPELLEE'S INTEREST IN THE 5.8 ACRE TRACT OF LAND WAS VALUED AT $16,875.

Earlier in this opinion we held that the *Mills* fee was marital property. Therefore, the 5.8 acre tract is joint property. Although the appellant may be personally bound to accept $10,150 for his interest in this property the appellee

is not bound because she did not consent or agree to the option. Her interest in the property is not limited to the option held by appellant's friend and partner. The court considered appraisals and other facts in reaching his decision and we cannot say his decree is clearly erroneous. It was not error to find appellee's interest to be valued at $16,875.

## IX

### THE COURT ERRED OR ABUSED ITS DISCRETION IN AWARDING ATTORNEY'S FEES AND OTHER EXPENSES.

Both parties recognize that it is a policy of this court to consider the matter of attorney's fees and costs to be within the sound judicial discretion of the trial judge. *Lytle* v. *Lytle,* 266 Ark. 124, 583 S.W.2d 1 (1979). In *Lytle* we held that it was not necessary that the trial judge hold a hearing on the amount of attorney's fees because having presided over the proceeding he was familiar with the services rendered by the attorneys. *See Pitcher* v. *Baltz,* 242 Ark. 625, 414 S.W.2d 859 (1967). While the attorney's fee is fairly liberal we do not find that the trial court abused its discretion.

## X

### THE COURT ERRED AND/OR ABUSED ITS DISCRETION IN AWARDING COSTS AND EXPENSES TO THE APPELLEE IN THE AMOUNT OF $2,811.20.

The expenses incurred and allowed by the trial court as costs included auto rental, air travel and motel charges for appellee's attorney. They also included at least a portion of the costs of the discovery deposition incurred by the appellee. Costs for discovery depositions are not court costs. *Long* v. *Henderson,* 249 Ark. 367, 459 S.W.2d 542 (1970). Costs were not recoverable at common law. *Jordan* v. *State,* 102 Ark. 43, 143 S.W. 131 (1912). Therefore, only statutory costs and fees are allowed. We have considered these items of expense in approving the aforementioned attorney's fees.

The case is remanded to the trial court with directions to proceed in a manner not inconsistent with this opinion.

ADKISSON, C.J., and HICKMAN, J., concur.

HAYS, J., not participating.