Stephen Martin DAY v. Sara Shinault DAY

83-207                                    663 S.W.2d 719

Supreme Court of Arkansas
Opinion delivered January 30, 1984

*Storey & McCord,* by: *William A. Storey,* for appellant.

*Terry R. Kirkpatrick,* for appellee.

*William George Myers,* for amicus curiae Robert C. Haring.

GEORGE ROSE SMITH, Justice. In this divorce case the basic question on appeal is whether the chancellor was right in holding that the appellant husband's interest in the retirement plan sponsored by his employer is "marital property" subject to allocation under our present statute governing the division of property in divorce cases. Ark. Stat. Ann. § 34-1214 (Supp. 1983). The chancellor was right.

The facts are free from dispute. The couple married in 1953 and lived together for 29 years, during which they had six children, all but one of whom have reached maturity. In 1981 Mrs. Day brought this suit for divorce, which was contested only as to the marital property. The decree granted a divorce to Mrs. Day, ordered that the family home be sold and the proceeds divided equally, directed the husband to pay alimony for 24 months and child support for the minor child, and divided the personal property, including the retirement-plan interest now in dispute. The appeal comes to us under Rule 29 (1) (c).

Dr. Day has been employed by the University of Arkansas since 1961, first as a physics professor and later as an associate dean. He participates in the University's pension plan by making monthly contributions of 10% of his salary, which the University matches with equal contributions. At the time of trial the total contributions by

and for Dr. Day had totaled $62,498.10. The accumulated value of his interest in the plan was $95,425.03.

Dr. Day's interest is vested in the sense that it cannot be diminished by the University and is not dependent upon his continued employment there. The funds in the plan are administered by the Teachers Insurance and Annuity Association and College Retirement Equities Fund, known as TIAA-CREF. The TIAA funds are invested in bonds and mortgages and provide guaranteed fixed annuities for participants in the plan. The CREF funds are invested in stocks and provide variable annuities that may fluctuate with the market.

Under the plan, Dr. Day cannot withdraw the funds standing to his credit, which have no loan or surrender value, and cannot transfer his interest. He can, however, stop making contributions at any time and begin receiving his annuities. Several lifetime options are available, with or without a guaranteed minimum number of payments and with or without a co-beneficiary. Only Dr. Day can make the choice of a particular option and designate the beneficiary if funds remain at his death. In summary, the plan is a combination of fixed and variable annuities which cannot be paid in a lump sum, have no loan value, and cannot be transferred.

The chancellor found Dr. Day's interest in the plan to be marital property and awarded half of the $95,425.03 in benefits to Mrs. Day. Under the decree, when, but only when, Dr. Day elects to begin receiving the annuities, Mrs. Day will receive her benefits based only upon the half interest awarded to her. Any contributions made by or for Dr. Day after the date of the decree will be added to his half interest and accrue only to his benefit. Dr. Day is required to maintain Mrs. Day as the beneficiary of her half of the accounts. A letter from TIAA-CREF indicates that there is available a procedure by which the terms of the decree can be carried into effect.

In Dr. Day's briefs he asks us to hold that his interest in the pension plan is his separate property, immune from any

claim asserted by Mrs. Day. To support his position he relies upon several of our recent decisions, which we review briefly.

In *Sweeney* v. *Sweeney*, 267 Ark. 595, 593 S.W.2d 21 (1980), we noted that under our earlier statute, Ark. Stat. Ann. § 34-1214 (Repl. 1962), vested pension benefits not yet due and payable were not "personal property" as to which the wife was entitled to one third as a matter of right. *See, Knopf* v. *Knopf*, 264 Ark. 946, 576 S.W.2d 193 (1979), and earlier cases. After the adoption of Act 705 of 1979 we failed to give full effect to the new law and instead adhered to the position we had taken under a quite different statute. In *Paulsen* v. *Paulsen*, 269 Ark. 523, 601 S.W.2d 873 (1980), we decided that a military pension, currently being paid but not transferable, was not marital property. We followed that reasoning in *Hackett* v. *Hackett*, 278 Ark. 82, 643 S.W.2d 560 (1982), concluding that an employee's interest in a capital account set up for him was not marital property, because it was not "fully distributive." *Potter* v. *Potter*, 280 Ark. 38, 655 S.W.2d 382 (1983), reached a similar result. On the other hand, a husband's interest in a profit-sharing trust was deemed to be marital property, because it was subject to his withdrawal. *Bachman* v. *Bachman*, 274 Ark. 23, 621 S.W.2d 701 (1981).

We now realize that we have inadvertently failed to recognize the new concept of "marital property," created by Act 705 of 1979, as amended. That statute defines marital property as *all* property acquired by either spouse subsequent to the marriage, with exceptions not important here. Section 34-1214 (Supp. 1983). That law directs that *all* marital property be distributed equally unless the court finds that division inequitable. In balancing the equities the court is to consider the length of the marriage, the parties' ages and occupations, their skills and employability, their respective needs, the contribution — "including services as a homemaker" — of each party to the acquisition of the property, and other enumerated matters. We have recently stressed such homemaking services in holding that where the wife was the breadwinner and the husband the homemaker, he was entitled to half the marital property acquired

by the wife in her own name and with her own earnings. *Stuart* v. *Stuart*, 280 Ark. 546, 660 S.W.2d 162 (1983). Of course, the converse must also be true.

Under the recent holdings of the Supreme Court, spouses must be treated equally in the absence of a valid reason for making a distinction. Our 1979 law was enacted pursuant to that mandate and must be construed in harmony with that intent. It is easy to demonstrate that the legislative purpose will be frustrated if controlling differences are drawn between pensions vested and currently payable and those that are vested but payable in the future. If, for example, Dr. Day had made a monthly deposit in a savings account for 20 years, that money would be marital property in a divorce case. The same rule would apply if, a year before the divorce, he had in good faith decided to invest the money in an annuity payable upon his future retirement. His interest in the annuity would also be marital property. That in substance is the situation in this case: Dr. Day has used part of the family's money to buy the annuities he now seeks to exempt from their proper classification as marital property. Under the law, however, we must recognize that Mrs. Day also contributed to the acquisition of the annuities by service as a homemaker and by bearing the six children and bringing them up.

In a strikingly parallel situation the Supreme Court of California has experienced a similar change in its views. California is a community property state. Back in 1941 the court held that nonvested pension rights are not property but mere expectancies, and thus not assets to be divided upon the dissolution of a marriage. *French* v. *French*, 17 Cal. 2d 775, 112 P.2d 235, 134 A.L.R. 366 (1941). But after observing the inequities brought about by the *French* holding during the ensuing 35 years, the California court unanimously reversed its position by overruling *French* in what has become the leading case in this area of law. *Re Marriage of Brown*, 15 Cal. 3d 838, 126 Cal. Rptr. 633, 544 P. 2d 561, 94 A.L.R. 3d 164 (1976). Two paragraphs from the *Brown* opinion are applicable to the case at hand:

We have concluded, however, that the *French* court's characterization of nonvested pension rights as expectancies errs. The term expectancy describes the interest of a person who merely foresees that he might receive a future beneficence, such as the interest of an heir apparent . . . or of a beneficiary designated by a living insured who has a right to change the beneficiary. . . . As these examples demonstrate, the defining characteristic of an expectancy is that its holder has no *enforceable right* to his beneficence.

\* \* \* \*

We conclude that *French* v. *French* and subsequent cases erred in characterizing nonvested rights as expectancies and in denying the trial courts the authority to divide such rights as community property. This mischaracterization of pension rights has, and unless overturned, will continue to result in inequitable division of community assets. Over the past decades, pension benefits have become an increasingly significant part of the consideration earned by the employee for his services. As the date of vesting and retirement approaches, the value of the pension right grows until it often represents the most important asset of the marital community. . . . A division of community property which awards one spouse the entire value of this asset, without any offsetting award to the other spouse, does not represent that equal division of community property contemplated by Civil Code section 4800.

The court explained that it was construing a "vested" pension right to be one that cannot be unilaterally terminated by the employer without also terminating the employment relationship. In that sense, Dr. Day's annuities are vested.

As the A.L.R. annotation to the *Brown* case shows, virtually all courts recognize or assume that pension rights are "property." In appropriate cases the chancellor may balance the equities by awarding the divorced wife alimony

commensurate with the husband's ability to pay, taking his pension rights into consideration. In other cases — and this is one — that solution is not satisfactory, for an award of alimony and a division of marital property serve different purposes. Here the chancellor awarded Mrs. Day monthly alimony for two years, to permit her to take college training that will enable her to support herself as a teacher. But the couple's most valuable asset is Dr. Day's vested $95,000 interest in the pension plan. In view of Dr. Day's present age, 52, it is uncertain when he will retire and begin to receive the annuities, in amounts not now foreseeable. Consequently, the chancellor's decision to defer Mrs. Day's realization of income from the pension plan appears to have been the wisest course available.

In holding that Dr. Day's interest in the pension plan is properly found to be marital property in this case, we are not attempting to lay down inflexible rules for the future. To the contrary, Section 34-1214 allows leeway for the exercise of the chancellor's best judgment, for it provides that all marital property shall be divided equally "unless the court finds such a division to be inequitable." What we do hold is simply that earnings or other property acquired by each spouse must be treated as marital property, unless falling within one of the statutory exceptions, and neither one can deprive the other of any interest in such property by putting it temporarily beyond his or her own control, as by the purchase of annuities, participation in a retirement plan, or other device for postponing full enjoyment of the property.

As a second point for reversal the appellant argues that treating his equity in the retirement plan as marital property may be inequitable because of possible tax consequences that may be unfairly burdensome to him. This matter was not developed at the trial, nor could it have been, for the tax consequences depend upon what federal and state tax laws may be in force as much as ten or twenty years from now. The parties, however, should share the tax burden equitably. We therefore amend the decree to reserve jurisdiction in the trial court for the resolution of any tax problem that may arise.

Affirmed, as amended.

ADKISSON, C.J., and HICKMAN, J., dissent.

DARRELL HICKMAN, Justice, dissenting. The majority may have "inadvertently" overlooked that in a half dozen cases we have adopted a traditional approach to marital property, but I haven't.

Those decisions, I assume, are all overruled by this decision. *Potter* v. *Potter*, 280 Ark. 38, 655 S.W.2d 382 (1983); *Hackett* v. *Hackett*, 278 Ark. 82, 643 S.W.2d 560 (1982); *Russell* v. *Russell*, 275 Ark. 193, 628 S.W.2d 315 (1982); *Bachman* v. *Bachman*, 274 Ark. 23, 621 S.W.2d 701 (1981); *Paulsen* v. *Paulsen*, 269 Ark. 523, 601 S.W.2d 873 (1980); *Sweeney* v. *Sweeney*, 267 Ark. 595, 593 S.W.2d 21 (1980); *Knopf* v. *Knopf*, 264 Ark. 946, 576 S.W.2d 193 (1979). The Potter case's precedential value is questionable in any event.

The approach of the majority, which follows that of California, can only lead to more confusion, uncertainty and perhaps, in many cases, less equitable decisions. In the past our courts have offset any inequity in a settlement of marital property by an award of alimony, which is now available to either party. If the circumstances of the marriage, the participation of the parties in the acquisition of property, or the raising of the family, deserve some consideration in terms of money, it can be taken care of with alimony. I would not even quarrel with the decision in this case if the wife were awarded alimony in the same amount she will receive from the division of the retirement plan. But by our prior decisions the pension was not marital property on the day of the divorce. It had no cash value; it had no loan value, it could not be divided; and it could not be assigned or transferred. If Mr. Day lives, he may draw it someday. The mere fact that Mr. Day contributed a small percentage of his monthly check into the plan during their marriage should not convert it into marital property. The same argument will apply to social security benefits received by a person that is self-employed. The next extensions of the rule will be insurance benefits with no cash or loan value. They are all

paid for with funds during the marriage. Some of the same logic can be applied to military pensions.

Divorce is supposed to be a final act, the severing of all possible ties between two parties, the dividing of the property they have acquired in the marriage on the date of the divorce. If the property can be divided at divorce, it should be done at that point. *Russell* v. *Russell, supra.* If it appears inequities may result regarding either party, alimony is the answer. That has been the answer of our courts and a good many other courts. *See, Wilson* v. *Wilson,* 409 N.E.2d 1169 (Ind. App. 1980); *In Re Marriage of Ellis,* 538 P.2d 1347 (Colo. App. 1975); *Ratcliff* v. *Ratcliff,* 586 S.W.2d 292 (Ky. App. 1979); *Robert C.S.* v. *Barbara J.S.,* 434 A.2d 383 (Del. 1981), citing *Paulsen* v. *Paulsen, supra;* and *In Re Marriage of Camarta,* 602 P.2d 907 (Colo. App. 1979). I see no reason to abandon that rule in favor of a different approach used by California.

I would reverse the decree.

ADKISSON, C.J., joins in this dissent.