William Russell MEEKS *v.* Patricia Chambers MEEKS

86-105                                      721 S.W.2d 653

Supreme Court of Arkansas
Opinion delivered December 22, 1986

*Gordon & Gordon*, by: *Allen Gordon*, for appellant.

*Tom Tatum*, for appellee.

DARRELL HICKMAN, Justice. This is a divorce suit. Patricia Chambers and Russell Meeks were married in 1971 and have two minor children. They separated on May 1, 1984, and on May 3, the appellee filed for divorce in Pulaski County, Arkansas, the parties' residence. She dismissed the action after experiencing difficulty in obtaining satisfactory legal counsel. She refiled the suit that same day in Yell County, the home of her family. The divorce and custody of the children were not contested, only the division of the property. Extensive discovery was conducted to determine the assets of the parties and, specifically, those of appellant's law practice. The controversy focused on whether the law firm assets, as determined by the chancellor, were marital property. On appeal five issues are raised for reversal: the increase in child support payments, the commissioner's fee for the sale of the joint property, the interest in the law firm awarded to the appellee, credit for house payments, and the distribution of the personal property. The chancellor was wrong to increase the child support and awarded an excessive commissioner's fee. In other respects the chancellor was not clearly wrong.

The parties either agreed, or did not contest, the valuation

date of the property being September 30, 1984. The trial court entered a final decree on January 14, 1985, ordering the appellant to pay $700 per month child support and establishing visitation rights. The trial court found that the appellee was entitled to one-half interest in the firm assets, including the accounts receivable and the "work in progress." After determining the separate property of each party, the chancellor ordered the sale of the joint property, and the proceeds divided equally. The appellee purchased the law firm's assets and the home at the public sale.

On October 28, 1985, the chancellor entered another order increasing the child support to $1,000 per month. The appellant was denied credit for house payments he made during the period of separation. This order also concerned profit sharing for 1984 and some items of personal property.

First, we consider the question of the increased child support. In the final decree entered January 14, 1985, the chancellor fixed child support at $700 per month after hearing the parties' testimony and considering the evidence concerning the parties' property and earning capacity. There was no hearing on a change in circumstances of the parties prior to the October 28, 1985, order, which raised child support to $1,000 per month. The only evidence before the chancellor was a petition filed by the appellee requesting the increase. The trial court only mentioned in its findings of fact that it viewed the appellant's 1984 income tax return in its consideration of the matter.

Ordinarily, the amount of child support lies within the sound discretion of the chancellor. *Hackett* v. *Hackett*, 278 Ark. 82, 643 S.W.2d 560 (1982); *Gross* v. *Gross*, 266 Ark. 186, 585 S.W.2d 14 (1979). Child support may be reviewed by the trial court at any time, even after the final decree is entered and the chancellor may modify a provision of child support to serve the best interests of the children when there are changed circumstances. *Wilson* v. *Wilson*, 270 Ark. 485, 606 S.W.2d 56 (1980); *Hurst* v. *Hurst*, 269 Ark. 778, 602 S.W.2d 137 (Ark. App. 1980). But the burden is upon the party seeking an increase in child support to show a change of circumstances. *Glover* v. *Glover*, 268 Ark. 506, 598 S.W.2d 736 (1980); *Riegler* v. *Riegler*, 246 Ark. 434, 438 S.W.2d 468 (1969). There was no evidence presented to show a change in circumstances, and there was no

hearing on the matter. The order increasing the child support is reversed.

■■ The second issue concerns the fee awarded the commissioner for the sale of the assets, consisting of real and personal property. The gross sale price was $216,200. The amount of the fee awarded was $6,486. We recently held in *Valley National Bank of Arizona* v. *Stroud*, 289 Ark. 284, 711 S.W.2d 785 (1986), that the statutory allowance for a commissioner's fee cannot be exceeded. Ark. Stat. Ann. § 12-1712 (Repl. 1979) provides that a sale of $35,000 or more calls for a commission of one-tenth of one percent. The appellee concedes that the fee exceeds the amount allowed by statute but argues the objection came after the sale was confirmed. The record does not reflect that the appellant ever waived an objection to the fee. The fee is reduced to the statutory amount, which is $216.20.

The third and fourth issues are closely related. The chancellor found the appellee was entitled to one-half of the law firm assets. The appellee's right to the law firm assets is not contested, only decisions by the chancellor concerning specific assets. The appellant questions the chancellor's finding that the accounts receivable and "work in progress" were marital property under Arkansas' new marital property law. Ark. Stat. Ann. § 34-1214 (B) (Supp. 1985). He argues that under *Potter* v. *Potter*, 280 Ark. 38, 655 S.W.2d 382 (1983), the law firm's accounts receivable are not marital property. In *Potter* we did say that accounts receivable might not be marital property unless there was evidence of fraud or intent to delay receipt of the property in order to exclude it from consideration in a divorce proceeding. In *Day* v. *Day*, 281 Ark. 261, 663 S.W.2d 719 (1984), we considered our prior decisions and stated:

> We now realize that we have inadvertently failed to recognize the new concept of 'marital property,' created by Act 705 of 1979, as amended. That statute defines marital property as *all* property acquired by either spouse subsequent to the marriage, . . .

We were wrong in *Potter* to qualify the treatment of accounts receivable as marital property. The general rule is that accounts receivable are marital property.

In the first case of *Riegler* v. *Riegler*, 243 Ark. 113, 419 S.W.2d 311 (1967), decided long before the new marital property law, we held that accounts receivable belonging to a partnership were assets of the partnership and therefore subject to division upon a divorce. We determined that instead of assigning the spouse half of the accounts receivable collected in the future, or in kind, accounts receivable should be treated as having a provable fair net present value, and an award made accordingly. We affirmed this holding in *Richardson* v. *Richardson*, 280 Ark. 498, 659 S.W.2d 510 (1983).

The accounts receivable totaled $20,002 as of September 30, 1984. The amount is not disputed nor is the valuation disputed, only the legal question of whether accounts receivable are marital property. The chancellor was right in holding they were marital property in this case, and the appellee is entitled to half of the value of the accounts receivable.

The next question is whether the trial court was right in finding that "work in progress" was an asset of the law firm and subject to division as marital property. "Work in progress" in this case was the firm's hourly work that had been performed and noted but not billed. Both parties employed accountants and the firm's books and files were scrutinized. The appellee's accountant found a total of 980.2 hours of work that had been performed and logged but not billed as of September 30, 1984. He was of the opinion that all the "work in progress" could be billed immediately. The appellant did not dispute that his files reflected the hours of work performed, but he denied that he deliberately delayed billing those clients. In the final decree, the chancellor specifically found that the appellant had delayed billing the "work in progress" in an attempt to deprive the appellee of her one-half interest in the funds accumulated during the marriage. The chancellor ordered the appellant to bill all unbilled time.

The accountants of both parties testified about the value of the 980.2 hours which was attributed to 52 files in the appellant's office. The appellee's accountant placed a value on the hours at $58,812.00. In reaching this figure, the appellee's accountant evidently gave no consideration for accounts which might not be collected. The appellant's accountant testified that the cost to produce an hour of work was $23.63. The chancellor ordered the

appellant to go through the files and determine the value of the hours, in his judgment, using $60.00 per hour. The appellant reported his findings in a detailed comprehensive report filed February 11, 1985. The appellant placed the files into four categories. The first category consisted of files that had been billed before the divorce decree was entered. The second category was files not ready for billing. The third category was files which would never be billed and had no value. The last category consisted of all other files not covered in categories one through three. The appellant concluded that the 980.2 hours were worth $41,451.40. The chancellor accepted this figure and ordered an equal division of this sum between the parties.

The appellant first argues that such work is not marital property. According to the Arkansas' marital property statute and our decision in *Day*, we conclude that such "work in progress" is marital property subject to division in a divorce action. The work performed in this case would be marital property according to several courts and legal authorities. *In re Marriage of Harry Rubinstein*, 495 N.E.2d 659 (Ill. App. 2 Dist. 1986); *Ondrasek* v. *Ondrasek*, 126 Wis. 2d 469, 377 N.W.2d 190 (1985); B. Goldberg, *Valuation of Divorce Assets* § 8.3 (1984).

The appellant next argues that the chancellor improperly evaluated the unbilled time because the chancellor did not consider the firm's cost to produce the work. The appellant argues that the value should have been reduced by a cost per hour figure of $23.63. The proper value of such an asset is ordinarily its provable fair net present value. The chancellor specifically rejected the appellant's argument to reduce the value by the hourly cost because he found that there was a deliberate delay in billing. The chancellor stated: "I think, this may be overlooking the principle, how we applied this, Mr. Gordon. I think what we applied was, had this been billed and had it been paid, this would be a marital asset subject to division in kind." By specifically finding that the appellant had deliberately delayed billing these hours, and consequently delaying the receipt of money that would have been collected, the chancellor treated this unbilled time differently from what is normally considered to be "work in progress."

In other words, this property was divided on the basis of what

the court found would have existed except for the appellant's deliberate delay in billing. So this property was not evaluated the same as accounts receivable or "work in progress" should be evaluated. It was considered as property that should have existed on September 30, 1984. Accordingly, we do not reach the question of how "work in progress" should be evaluated and whether the firm's cost must be deducted from a given figure. The chancellor essentially set the value at what the appellant thought it was worth. He heard disputed testimony about this asset and made specific findings which we cannot say are clearly wrong.

The next issue is the chancellor's treatment of the house payments made by the appellant during the separation. At first the trial court determined that the appellant would receive credit for those payments from June, 1984 to June, 1985. Later the chancellor rescinded the order, because the appellant had possession of the house during the separation. The appellant argues that he should be credited for 35 house payments which were $859.16 per month. According to appellant's testimony, beginning in October, 1980 and ending September, 1983, these payments were made from funds which the appellant said were his separate property. The appellant testified he owned an interest in Meeks and Associates, a limited partnership, which was a gift from his father. An automatic draw against these funds was made to a joint account to pay the monthly house payment. The appellee's accountant testified that the house payments were made from joint funds. The appellant argues that this was his separate property which should have been awarded to him.

It was a mixed question of fact and law as to whether the house payments were made from the separate property of the appellant for which he should receive credit. It was not disputed that the residence was held jointly by the entirety. The chancellor specifically found that the funds were joint property because they were paid into a joint account and used to pay a debt on jointly owned property. He found the property had become jointly owned. The chancellor heard the testimony, examined the evidence, and concluded that the appellant had not established a right to those funds as his separate property. We cannot say this decision was clearly wrong.

Appellant next argues that the chancellor made an

inequitable distribution of the personal property of the parties, dividing the law firm assets equally and ordering them sold, while awarding the household furnishings to the appellee. Ark. Stat. Ann. § 34-1214(A) (1) provides "all marital property shall be distributed ½ to each party unless the court finds such a division to be inequitable, in which event the court shall make some other division that the court deems equitable. . ." We note that reference was made in the record to the fact that the appellant took some of the household furnishings for his own, how much we cannot determine. Also the chancellor awarded the appellant any furnishings he received from his family just as he did the appellee. The court mentioned that the children needed some household furnishings. The chancellor based his distribution of their property on equitable grounds and his findings support the division. *Ford* v. *Ford*, 272 Ark. 506, 616 S.W.2d 3 (1981). In this case we do not find an abuse of discretion in the division of this personal property of the parties.

The two other arguments raised by the appellant concern (1) a bonus paid to the appellant's law associate, and (2) an order requiring the appellant to return certain personal property. The chancellor awarded the appellee $2,130 credit for one-half of the bonus paid to the appellant's associate in 1984. We are given sparse facts and little reason by either party as to how we should decide this issue. We cannot reverse a finding of fact by the chancellor unless it is clearly wrong. ARCP 52 (a). In this case we cannot speculate that the chancellor was wrong. Neither can we say the chancellor was clearly wrong in his order requiring the appellant to return certain personal property to the appellee. We will not presume the chancellor will arbitrarily disregard a reasonable explanation if the appellee cannot comply with all of that order.

Affirmed in part and reversed in part with directions to enter a decree consistent with this opinion.