John E. DILLARD *v.* Cecilia Ann DILLARD

CA 88-359                                         772 S.W.2d 355

Court of Appeals of Arkansas
En Banc
Opinion delivered June 21, 1989

*Robert Batton,* for appellant.

*Howard, Price, Trice, Basham & Hope, P.A.,* by: *Dale Price and Carey E. Basham,* for appellee.

MELVIN MAYFIELD, Judge. The parties in this divorce case were married in 1963. The appellee, Cecilia Ann Dillard, filed for divorce on April 16, 1987. They have two sons: John Vincent, who was twenty-one at the time the divorce suit was filed, and Michael Edward, who was seventeen. The appellant, John E. Dillard, appeals the court's property division. He argues that the court erred in (1) failing to order appellee to return certain funds taken from two joint accounts; (2) awarding appellee one-half of his severance pay; and (3) finding that two racing cars were marital property.

In 1980 appellant opened two accounts in Savers Federal Savings and Loan, each of which listed the name of one of his sons, followed by appellant's name and his wife's name, all separated by an "or." The social security number listed on each account was that of the son and each of the young men testified that he was aware of the fund in his name. Each of them understood that the fund was for his college education. Each of them thought the fund in his name belonged to him; knew he could withdraw the money from the fund but had not been told by his father that the fund was a gift; and before the parents' separation, neither of the boys ever removed any of the money from his fund.

Appellee testified that she had not signed the signature card for either account and, until just prior to the separation from her husband, had never written a check on either account. However, prior to her separation, she withdrew $2,500.00 from Michael's account and, on the day she filed for divorce, she withdrew another $500.00 from that account. She testified that the accounts had originally been set up when the boys were small to provide for their college education but that her husband had used the accounts for some ordinary personal obligations.

Appellant testified that the accounts were marital property; that the money in them did not belong to the boys and that neither had any authority to remove any funds from either account. He said he placed the boys' names on the accounts to provide funds

for them and as a means of bypassing probate in case something happened to him and their mother.

After divorce proceedings had been instituted, appellee and her sons went to Savers and withdrew all the money from each account. Each check was made out to appellant and appellee, as well as to the son whose name was on the account. John Vincent's withdrawal totalled $34,434.05; Michael's withdrawal totalled $29,244.28. Appellee endorsed each check and the money was deposited in a bank in Texas. John Vincent deposited his money in an account in his and his wife's names; Michael deposited his money in an account in his and his mother's names.

Appellee argued at trial that the money in the two accounts was a gift to the boys and, therefore, not marital property. The chancellor held, however, that the money was marital property and ordered appellee to return to appellant one-half of the funds withdrawn by Michael. The appellee has not appealed from that decision. As to the funds withdrawn by John Vincent, the chancellor, during a discussion with counsel at the end of a hearing, stated:

> I think the funds, as between the parties, were marital property, and if they were still setting in the Savers account, I would order them split. I just need to know what to do, since they're not, and were withdrawn by persons that Mr. Dillard authorized to withdraw them and not her.

After further discussion about the account in John Vincent's name, the chancellor stated:

> I did not find that she caused her son, her older son, to make the withdrawal. That dispute is between him and his father. And possibly his mother; if she wants some portion of it back. As to the amount that is remaining in the account with the younger son, one-half of those funds should be returned to Mr. Dillard.

Appellant contends on appeal that the chancellor erred in failing to also order appellee to return to him one-half of the funds taken from John Vincent's account. Appellant argues that the court incorrectly stated he had authorized his sons to withdraw funds from the accounts; that appellee was a participant in the

improper withdrawal of the funds; and that appellee still has control over sufficient funds to make restitution to him.

The first argument is based upon the assumption that the chancellor relied upon Ark. Code Ann. § 23-32-1005 (1987) for her decision that appellant had authorized his sons to withdraw from the accounts. This statute provides that accounts may be opened in banking institutions and saving and loan associations in the names of two or more persons and unless a written designation to the contrary is made the account will be owned by those persons as joint tenants with right of survivorship. The statute also provides that unless a contrary written designation is made, the funds in the account may be paid to or on order of any joint tenant or any surviving joint tenant. The saving and loan associations were added to this statute by an amendment enacted in 1983. Thus, the appellant argues that the act does not apply to this case since these accounts were opened in 1980. However, we do not agree that the chancellor relied upon this statute, and we think the view she took makes the statutory problem moot.

There is in evidence a signature card executed November 12, 1980, to open one of the accounts in the Savers Federal Savings and Loan Association. This card was for the account in Michael's name. The card has a line designated for the names of the holders of the account and underneath this line is printed "as joint tenants with right of survivorship and not as tenants by the entirety." The first name on this card is Michael E. Dillard, followed by John E. Dillard, followed by Cecilia Dillard, with the word "or" at the end of the first two names. While the card for John Vincent's account is not in evidence, there is no contention that another type card was used for his account. Also, there is in evidence an account statement, dated May 7, 1987, for each account. The names on John Vincent's account are just like the ones on Michael's account except for the names of the boys. The appellant testified that he opened both accounts and he was responsible for the manner in which they were opened.

Based upon the names on the accounts and the other evidence in the case, the chancellor found that the money withdrawn by John Vincent from his account was authorized by his father and that any dispute about the ownership of that money was a matter between them. Although the appellant argues that

the appellee was responsible for the withdrawal of the funds, the trial court did not agree. The judge's decision as to the other fund is not at all inconsistent. Both funds were found to be marital property and the appellee was ordered to return one-half of the fund still in her name. However, the court found that the appellee did not cause John Vincent to withdraw the money from the fund in his name and the court simply held that the appellant had made it possible for John Vincent to get that money, the appellee did not cause him to get it, and the appellant would have to take up the matter with his son — not the appellee who did not have any of the money from that son's account. We do not think the chancellor's ruling was clearly against the preponderance of the evidence.

Next, appellant argues the trial court erred in awarding appellee one-half of appellant's severance pay. Appellant contends that while his severance pay was based upon the number of years he was employed, it was not a benefit which accrued as a result of his employment. Relying on *Potter* v. *Potter*, 280 Ark. 38, 655 S.W.2d 382 (1983), in which the Arkansas Supreme Court held that income an attorney earned before the divorce but received after the divorce, was not marital property, appellant argues that the award of one-half his severance pay to appellee was error.

Appellant worked for Arkansas Power & Light Company throughout the marriage and had been terminated on November 30, 1987, and began drawing severance pay before the divorce was granted on March 29, 1988. As explained by the AP&L payroll manager, the severance pay was "a benefit that the company decided upon for the outplaced employees, a reduction in force of the company." He subsequently stated that it was to be parceled out in increments over the future, but was a right or asset that the appellant acquired based upon his years of service. We do not believe appellant's reliance on *Potter* is justified in light of the language in *Meeks* v. *Meeks*, 290 Ark. 563, 721 S.W.2d 653 (1986), in which the Arkansas Supreme Court said:

> The chancellor found the appellee was entitled to one-half of the law firm assets. The appellee's right to the law firm assets is not contested, only decisions by the chancellor concerning specific assets. The appellant questions the chancellor's finding that the accounts receivable and

"work in progress" were marital property under Arkansas' new marital property law. Ark. Stat. Ann. § 34-1214(B) (Supp. 1985). He argues that under *Potter* v. *Potter*, 280 Ark. 38, 655 S.W.2d 382 (1983), the law firm's accounts receivable are not marital property. In *Potter* we did say that accounts receivable might not be marital property unless there was evidence of fraud or intent to delay receipt of the property in order to exclude it from consideration in a divorce proceeding. In *Day* v. *Day*, 281 Ark. 261, 663 S.W.2d 719 (1984), we considered our prior decisions and stated:

> We now realize that we have inadvertently failed to recognize the new concept of 'marital property,' created by Act 705 of 1979, as amended. That statute defines marital property as *all* property acquired by either spouse subsequent to the marriage, . . .

We were wrong in *Potter* to qualify the treatment of accounts receivable as marital property. The general rule is that accounts receivable are marital property.

290 Ark. at 566.

We believe this reasoning is applicable to the appellant's severance pay. It was earned by the years of service he put in with AP&L during which time he was married to appellee and he began drawing it before they were divorced. We agree that it is marital property and appellee is entitled to one-half of it.

Finally, appellant argues that the court erred in finding that the two racing cars were marital property. The appellee testified that both cars were marital property. At one hearing, the appellant testified he owned both cars. At another hearing, the appellant testified his father owned one car and they owned the other car jointly. His father testified to the same thing. All of this boils down to a question of fact for the trial judge. Findings of fact shall not be set aside unless clearly erroneous (clearly against the preponderance of the evidence), giving due regard to the superior opportunity of the trial court to judge the credibility of the witnesses. Ark. R. Civ. P. Rule 52(a). We cannot say the chancellor's finding that the cars were marital property was

clearly erroneous.

Affirmed.

JENNINGS and ROGERS, JJ., dissent.

JUDITH ROGERS, Judge, dissenting. I respectfully dissent. The chancellor was correct in her findings as to the division of the severance pay and the division of the racing cars as marital property. The chancellor also correctly found that the funds in the interest bearing bank accounts were marital property due to the parties' dominion and control over them, despite the fact that the accounts were designated as being joint tenancies with the right of survivorship and bore the social security numbers of the respective sons. The court rejected the argument that these were gifts to the sons. The chancellor then stated that she did not "know what to do." Although she obviously knew the correct law to apply, she failed to carry out her decision by not giving the appellant credit for one-half the funds in the approximate amount of $34,000 placed in the name of the parties' son, John Vincent, and his wife. There were other assets in the hands of the appellee to satisfy this $17,000 set off, and this should have been done.

In affirming the chancellor on this issue, the majority seems to ignore the fact finding of the chancellor that this was marital property, which is, of course, subject to equal division upon divorce. Additionally, the majority appears not to recognize that the chancellor possesses the equitable authority to offset funds that have been removed from the jurisdiction of the court. I agree with the chancellor's fact finding, and prefer to show her the way the result could comport with the facts and applicable law. More importantly, I also do not wish to provide encouragement to future litigants that marital funds can be removed from the court's jurisdiction with impunity.

JENNINGS, J., joins in this dissent.