John E. BOX, Jr. and Ruth M. BOX
*v.* R. F. DUDECK

78-265                                    578 S.W. 2d 567

Opinion delivered February 26, 1979
(Division II)
[Rehearing denied April 23, 1979.]

*Ball & Mourton,* for appellants.

*Wade, McAllister, Wade & Burke, P.A.,* by: *Rudy Moore, Jr.,* for appellee.

DARRELL HICKMAN, Justice. John E. Box, Jr., one of the appellants, agreed in writing to sell his interest in 89 acres of land to R. F. Dudeck, appellee, for $90,000.00. The land was held in Box's name only. Ruth M. Box, John's wife, refused to sign the agreement. Dudeck decided to seek specific performance of the agreement, satisfied to take the land subject to Mrs. Box's inchoate dower interest.

The unusual, but not unprecedented, thing about this case is that specific performance of a land sale agreement was ordered even though a wife refused to sign the agreement.

The Washington County Chancery Court found that Box had agreed to sell his interest, ordered specific performance, and found the value of the inchoate dower interest to be $20,826.00. Dudeck was ordered to pay the agreed price, less an abatement of the dower interest. A lien was imposed on the land for the value of the dower interest subject to three conditions: Should John E. Box, Jr. predecease his wife, Ruth, the lien would be void; if Box is alive seven years after the deed is recorded, the abated amount will be payable to Box; if Ruth relinquishes her dower interest within seven years to Dudeck, the abated amount is payable to her.

The Boxes appeal alleging two errors, the second encompassing three arguments.

First, it is argued the agreement was conditioned on the wife signing the agreement and the chancellor erred in finding otherwise.

This issue is purely a question of credibility of the witnesses. Only two people actually knew what Box agreed to — he and the real estate broker, Phyllis Enos. Dudeck never talked to the Boxes and it is undisputed that Ruth Box never said she would, nor did she sign the agreement.

Ms. Enos, a Fayetteville real estate broker, testified she was shown the property by John E. Box a month before the sale. On April 5, 1975, Dudeck signed an offer to buy the property for $90,000.00, $15,000.00 down, the balance to be paid over ten years. Enos took the offer to Box who, after consulting with his attorney and accountant, added some provisions. An amended offer with these conditions was prepared and on the same day both Dudeck and Box signed it.

According to Ms. Enos, she asked Box if his wife's signature should not be obtained. Box replied it would not be necessary. She said she assumed Box was simply speaking for both of them. However, since it is appropriate to obtain a wife's signature, she called the next day or so to see if Ruth Box had signed or would sign the agreement. She said that Box told her his wife would not sign but that he still wanted to go through with the transaction. She said she then called Dudeck who decided that he still wanted to go through with the agreement.

Mr. Box essentially denied Ms. Enos' statement about agreeing to sell without his wife's consent. He admits he signed the agreement and had provisions added as Ms. Enos testified. He stated the sole reason he refused to sell was because his wife would not sign the agreement.

Box testified that when Ms. Enos asked him if there would be any trouble getting the signature of Ruth Box, he said he did not think so. He said that Ms. Enos replied, "I will take care of it." He testified that Ms. Enos did not call him in a day or so about Ruth's signature but instead talked to his wife. He said his wife told Ms. Enos she would not sign. He flatly denied he ever told Ms. Enos he wanted to sell anyway.

Mr. Box, a contractor who holds a real estate broker's license, admitted that in a pre-trial deposition he said Ms. Enos never asked about his wife's signature at the time he signed the agreement. He admitted that this testimony was inconsistent with his trial testimony. Also, Box testified that he did not know that the property was held in his name only

at the time he signed the agreement. He said that he and his wife had originally held the land as tenants by the entirety but as a result of some estate planning upon advice by an attorney several years before, Mrs. Box conveyed her interest to him. He said he had simply forgotten about the deed.

Mr. Dudeck testified simply that he was willing to go through with the transaction without a release of the dower interest.

Ruth Box testified that she first saw the offer and acceptance in her lawyer's office. She essentially corroborated her husband's statement that Ms. Enos called their home and she informed Ms. Enos she was not ready to sign the agreement. She remembered discussing with her husband the fact that a man named Dudeck wanted to buy the place for $90,000.00. She did not think it was enough. She did not recall her husband ever telling her that he had signed the agreement.

The question here is one of fact: Did John Box unconditionally agree to sell his interest in the land? He signed the agreement, adding conditions, saw the $15,000.00 check deposited by Dudeck with Ms. Enos, and, according to Ms. Enos, said he wanted to sell it regardless of his wife's actions. Mr. Box testified to the contrary. It was this conflict that the court resolved in favor of the appellee. Where matters of credibility are concerned, findings of those in a position to observe the witnesses, (in this case, the chancellor) are given great weight. On appeal, we only reverse such a judgment if it is clearly against the preponderance of the evidence. *Digby* v. *Digby*, 263 Ark. 813, 567 S.W. 2d 290 (1978). We cannot say in this case that the finding of the court regarding the agreement was wrong.

While specific performance in such a case is unusual, it is not unprecedented. Dudeck was satisfied to proceed with the transaction without the release of the dower interest. That was an option he had. *Reed* v. *Phillips*, 191 Ark. 58, 83 S.W. 2d 554 (1935). In the alternative, he could have elected to sue for damages for failure to deliver a merchantable title. *Vaughan* v. *Butterfield*, 85 Ark. 289, 107 S.W. 993 (1908).

The second allegation of error relates to the terms of the dower interest and the abatement order. The trial court asked for briefs and requested arguments as to the value of the dower interest. The appellants argued to the trial court, and to us on appeal, that the value of the dower interest is $10,-597.44. This argument is based on an interpretation of Ark. Stat. Ann. § 50-701, *et sequentes* (Repl. 1971). This figure was arrived at by reducing the purchase price of $90,000.00 to one-third, or $30,000.00, which appellants contend is the value of the fee interest to which the wife's dower interest would attach. Next, using tables in Ark. Stat. Ann. § 50-705, they determine the annuity to be 10.7792 using Mr. Box's age of 52 years, together with the legal interest rate of 6%. This figure, multiplied by an annual income figure of $1,800.00 ($30,000.00 times 6%) produces a figure of $19,402.56. It is argued that this is the value of Mr. Box's interest in one-third of the land that is subject to the dower interest. $19,402.56 subtracted from $30,000.00 equals $10,597.44.

The chancellor, in a well reasoned memorandum, pointed out that this argument was erroneous for two reasons: First, the dower was inchoate, not vested; second, Mr. Box's age was used rather than his wife's. Using the table as a reference, the court concluded that a more reasonable value of the interest would be $20,826.00.

While the value determined by the court may not be exactly precise, it was the duty of the appellants to affirmatively show that it was erroneous. *Peoples Protective Life Ins. Co. v. Smith*, 257 Ark. 76, 514 S.W. 2d 400 (1974). The appellants have failed to do that.

Next, it is argued that the wife's dower interest should bear interest at the contract rate until paid under Ark. Stat. Ann. § 29-124 (Repl. 1962). This argument is based on the premise that this was a judgment and that all judgments bear interest. The appellee correctly points out that this abatement of the purchase price was not a judgment. The dower interest has not been barred or relinquished. The full amount abated is payable to Mrs. Box at any time in cash at her option.

Finally, it is argued that the court was wrong in one of the conditions it imposed on the abatement, that is, that should Mrs. Box predecease Mr. Box within the seven year period the money should be paid to Mr. Box rather than result in a reduction in the original purchase price. Although this condition was not specifically included in the chancellor's decree, we agree with appellants. We think this omission was an oversight of the court and the order is so modified.

Affirmed as modified.

We agree. HARRIS, C.J., and FOGLEMAN and HOLT, JJ.

PURTLE, J., dissents.