Peggy BOGGS *v.* Donald D. BOGGS

CA 88-156                                        761 S.W.2d 956

Court of Appeals of Arkansas
En Banc
Opinion delivered December 21, 1988
[Rehearing denied January 25, 1989.]

*Mark Cambiano*, for appellant.

*Lightle, Beebe, Raney and Bell*, by: *A. Watson Bell*, for appellee.

BETH GLADDEN COULSON, Judge. Appellant, Peggy Boggs, appeals from a divorce decree that denied alimony and found certain personal property to be the separate or nonmarital property of appellee, Donald D. Boggs. We affirm in part and reverse in part and remand.

Appellant and appellee married in 1955. Appellee is a senior vice president of First National Bank in Searcy. Appellant, who has a high school diploma and some typing and clerical skills, has not worked outside the home for much of the marriage. In April 1987, appellant petitioned for divorce based on general indignities. Appellee counterclaimed. A trial was held before the chancellor on November 3, 1987, and the trial court denied appellant's request for divorce, granting appellee the divorce on the ground of adultery. The court denied appellant's request for alimony and divided the parties' property. In the property division, the chancellor found that the following was nonmarital property and not subject to division upon divorce: an earnings asset account, one-hundred-fifty shares of bank stock, and two individual retirement accounts. From those rulings, appellant brings this appeal.

For her first point for reversal, appellant argues that the trial court erred in ruling that the earnings asset account was nonmarital property. Before opening the earnings asset account, but during the marriage, appellee received about $50,000 from his parents' estate. Initially, he used the money to purchase certificates of deposit that earned interest until January 1983, when he transferred the inherited funds, and the interest, to the earnings asset account. Originally, the account was in the names of "Don or Peggy Boggs." In May 1983, appellant changed the account to "Don Boggs, payable on death to Peggy Boggs." Appellee closed the account in 1987, after appellant had filed for divorce.

In finding that the earnings asset account was nonmarital property, the trial court held that the burden had been on appellant to prove that an inter vivos gift was made to her when appellee put both his name and appellant's on the account. The trial court relied on *Hayse v. Hayse*, 4 Ark. App. 160-B, 630 S.W.2d 48 (1982), a case that this court examined in *Lofton v. Lofton*, 23 Ark. App. 203, 745 S.W.2d 635 (1988). Although the chancellor in the instant case did not have the benefit of the precedent in *Lofton*, we find it controlling.

In *Lofton*, we clarified the law applicable to personal property held by the entireties and, in particular, joint accounts. We held that when property, personal or real, is placed in the names of a husband and wife, the presumption arises that they own the property as tenants by the entirety. *Lofton v. Lofton, supra*. Clear and convincing evidence is required to overcome the presumption that the spouse depositing the money in the joint account did not intend a gift or one-half interest to the other spouse. *Id*. Once established, one spouse or the other lacks unilateral power to destroy the entirety. *See Lofton v. Lofton, supra*.

Having found that *Lofton* is controlling rather than *Hayse v. Hayse, supra*, we remand for further proceedings in which the chancellor must determine whether appellee has met his burden of rebutting the presumption that the earnings asset account in both spouses' names was held as a tenancy by the entirety. Furthermore, in regard to the interest on the certificates of deposit (CD's) that appellee used to open the account, the

Supreme Court of Arkansas has held that marital property includes the income derived from nonmarital property acquired after the marriage. *Wagoner v. Wagoner*, 294 Ark. 82, 740 S.W.2d 915 (1987). In the instant case, the chancellor did not have the benefit of the *Wagoner* precedent, which is controlling. Clearly the interest that accrued on the CD's was marital property. On remand, the trial court's findings must be consistent with the holding in *Wagoner*.

Appellant's second point for reversal is that the trial court erred in ruling that bank stock purchased by appellee was nonmarital property. As a bank officer, appellee was offered the opportunity to purchase stock in the bank's holding company, First Central Corporation, a closely held corporation. He made two stock purchases for a total of one-hundred-fifty shares.

The first purchase was in June 1978, when appellee purchased sixty-one shares for $7,015. The purchase was made with funds drawn from a joint savings account in the names of appellee and his father. At trial, appellee and Wayne Hartsfield, president of the bank where appellee works, testified that the money in the account was solely that of appellee's father. The trial court held that the withdrawal from the account to purchase the stock was a gift, from the father, and that the stock was nonmarital property. We find that the chancellor erred on this issue.

Monies earned from the rental of a car lot owned by appellee and his father were deposited in the joint savings account of appellee and his father. Appellee and his father purchased the property after appellant and appellee had married, and the trial court found that the car lot was marital property. There is no appeal from that finding. Concerning whether income from the car lot was ever deposited in the joint account that was in the name of appellee and his father, the record reveals that appellee testified as follows:

QUESTION: When you got the rental check from the car lot, did you put your share in that account or just his share (the share of appellee's father) in that account?

ANSWER:    Well, on occasion, I probably put some of the rental money in his account (the account held in the names of appellee and his father), but when I did, I mean, he never did draw any rental money and occasionally I'd just pop a check in there for him or something.

■    Our supreme court held in *Potter* v. *Potter*, 280 Ark. 38, 655 S.W.2d 382 (1983), that property acquired during the marriage, such as the income from the car lot in the instant case, is presumed to be marital property. Relying in part on *Potter*, this court has stated that where transactions result in great difficulty in tracing the manner in which nonmarital and marital property have been commingled, the property acquired in the final transaction may be declared marital property. *See Speer* v. *Speer*, 18 Ark. App. 186, 712 S.W.2d 659 (1986). In the instant case, the evidence does not permit tracing of the funds, and, based on the testimony above, we cannot be certain of the extent to which separate funds, as opposed to marital funds, were used to acquire the stock. We reverse and remand for the chancellor to divide the sixty-one shares of stock as marital property, pursuant to Ark. Code Ann. Section 9-12-315 (Supp. 1987). In that division, the spouses must be treated equally unless a valid reason exists for making a distinction between them. *See Day* v. *Day*, 281 Ark. 261, 663 S.W.2d 719 (1984).

Appellant's second point for reversal also addresses the bank stock purchases appellee made in 1983, when he bought eighty-nine shares with funds from the earnings asset account. The question of any distribution of that stock as marital property will depend on the trial court's ruling on remand, in light of *Lofton* v. *Lofton, supra*, whether the earnings asset account was marital property. The issue of whether the earnings asset account was marital property also will decide the question raised by appellant's third argument for reversal. For her third argument, appellant contends that the trial court erred in finding that two individual retirement accounts (IRA's) were nonmarital property. Appellee purchased the IRA's for himself out of the earnings asset account.

■■    Appellant's final argument is that the trial court

erred in denying alimony. The award of alimony is not mandatory; it is a question that addresses itself to the sound discretion of the chancellor. *Lofton* v. *Lofton, supra.* We do not disturb the chancellor's decision absent a clear abuse of that discretion. *Id.* Numerous factors are considered in determining whether to set alimony. *Weathers* v. *Weathers,* 9 Ark. App. 300, 658 S.W.2d 427 (1983). The trial court heard testimony on those factors and stated in its decree that it had fully considered them. Without discussion of the details of the evidence, we hold that the chancellor did not abuse his discretion in his ruling on alimony.

Affirmed in part; reversed in part and remanded.