Fred DUNAVANT *v.* Melissa DUNAVANT

CA 98-819 986 S.W.2d 880

Court of Appeals of Arkansas
Division II
Opinion delivered March 17, 1999

2

*Brazil, Adlong, Murphy & Osment*, by: *William Clay Brazil*, for appellant.

*McNutt & Swicegood Law Firm*, by: *Mona J. McNutt*, for appellee.

JOSEPHINE LINKER HART, Judge. The parties married on July 14, 1990, and separated March 7, 1995. At the divorce hearing held on August 6, 1997, the Chancellor awarded appellee the divorce and ordered a division of property. Appellant contends the Chancellor erred by: (1) dividing equally shares of stock, sureties, and other investments; (2) dividing equally the net proceeds from the sale of the marital home; and (3) dividing equally appellant's savings plan and retirement benefits that accrued during marriage.

All issues presented in this appeal deal with the division of property. In reviewing such cases, we affirm the findings of the

chancery court unless these findings are clearly erroneous. *Box v. Box*, 312 Ark. 550, 851 S.W.2d 437 (1993). We affirm the decision of the chancery court on issues (2) and (3). We affirm in part, reverse in part, and remand on issue (1).

### A. Stocks

Appellant was employed by United States Tobacco, Inc. ("UST"). As a benefit of employment, appellant received options to purchase stock in UST. Five options were granted prior to the marriage. Of those five, three were exercised during the marriage. The appellant received six options during the marriage and exercised only one of these during the marriage. The chancellor, disregarding the options, ruled that all stock, securities, and other investments owned and retained by the parties from July 14, 1990, until August 6, 1997, be divided equally between the parties.

Five options are at issue in this case. Four of those options were granted prior to July 14, 1990, the date the parties were married, and one option was granted after their marriage. The options were issued and exercised as follows:

| Option Grant | Exercise Date | Number | Loan | Purchase Price |
|---|---|---|---|---|
| 1. 06/06/86 | 10/09/90 | 1200 | $ 8,962.50 | $10,162.50 |
| 2. 07/22/87 | 06/25/90 | 1200 | 0.00 | 17,100.00 |
| 3. 04/13/88 | 08/27/90 | 1600 | 0.00 | 24,600.00 |
| 4. 09/28/89 | 12/02/92 | 1000 | 0.00 | 13,781.25 |
| 5. 08/27/90 | 12/02/92 | 1200 | 0.00 | 17,812.50 |

The fifth option was granted on August 27, 1990, approximately one month after the parties were married, and is therefore a marital asset. *Richardson v. Richardson*, 280 Ark. 498, 659 S.W.2d 510 (1983); *Cate v. Cate*, 35 Ark. App. 79, 812 S.W.2d 697 (1991). In *Richardson*, the court ruled that stock options constitute martial property if acquired during the marriage. The court further stated that the value of the option is the difference between the cost of exercising the option and the market value of the stock.

■ The fifth option was exercised on December 2, 1992, for a purchase price of $17,812.50. The option price was $14.84 per share and the market value on the exercise date was $33.56. Appellant sold sufficient shares at the market price to pay the commission cost and the option price for the shares. Appellant testified that he retained 300 shares of UST from that transaction. The 300 shares were later sold and the proceeds were used to purchase stock in a company known as "MSU." The MSU stock acquired in this transaction is marital property, and the Chancellor properly awarded appellee one-half of those shares.

■ Appellant's first option was granted on June 6, 1986, and was exercised on October 9, 1990. The option price was $8.47 per share and the market value on the exercise date was $30.56. Because the market price per share had increased by $21.09, the 1200 shares of UST had a value of $36,672.00 on the date of purchase. Appellant paid $1,200.00 cash toward the purchase price of $10,162.50 and financed the remaining balance of $8,962.50. Appellant's use of marital funds in the purchase of this stock entitles appellee to an interest in the stock to the extent that marital funds were expended to purchase shares of stock. *Id.* Appellee's interest does not extend to the benefits appellant acquired before marriage through his ownership of options. Appellant is entitled to receive as premarital property the difference between the purchase price granted in the option and the market price the parties would have paid for stock without the option. Had the parties spent $10,162.50 for stock at the market price of $30.56 per share, they would only have been able to purchase 332.5 shares of stock. Appellee is entitled to receive one-half of the shares that marital funds purchased, or 166.25 shares. The appellant is entitled to the benefit of the option or 867.5 shares as his premarital property and one-half or 166.25 of the shares purchased with the marital funds for a total of 1033.75 shares of stock.

■ The second option was granted on July 22, 1987, and was exercised on June 25, 1990, approximately one month before the marriage. The money exercised from that stock option was used to purchase U.S. Treasury stripped coupons on October 10, 1990. On December 21, 1992, the appellant sold the stripped

coupons to purchase 150 shares of Wal–Mart stock, which he sold on November 13, 1996. With these proceeds, appellant purchased 339 shares of stock in MSU and 188 shares of stock in Sybase, Incorporated. This money is traceable and is nonmarital property. Ark. Code Ann. § 9-12-315(b) (Repl. 1998).

 ██ The third option was granted on April 13, 1988, and exercised on August 27, 1990. The option granted appellant the right to purchase 1600 shares of UST. This option was premarital property even though it was exercised after the date of the marriage. The option price was $15.38 per share for a total purchase price of $24,600. The market value of each share on the date the option was exercised was $29.69. Had the parties purchased 1600 shares at the market price, they would have paid $47,500.80; however, the option price allowed appellant to purchase the shares for $24,600. He paid for the shares by selling a portion of them at the market price and retained the remainder of the shares. Appellant then sold those shares, which were his premarital property, and used the proceeds, approximately $20,000, to remodel the marital home. Appellant received the money from the sale of the stock in August 1990, one month after the marriage. The deed to the marital home is in the name of both appellant and appellee. When property is placed in the names of a husband and wife, a presumption arises that they own the property as tenants by the entirety. This presumption can be overcome only by clear and convincing evidence that a spouse did not intend a gift of one-half interest to the other spouse. *Boggs v. Boggs*, 26 Ark. App. 188, 761 S.W.2d 956 (1988). When appellant invested his separate funds in the marital home, and that home was deeded in the names of both parties, a presumption arose that appellant intended a gift to appellee of an equal interest in the premarital funds he placed in the home. *Ramsey v. Ramsey*, 259 Ark. 16, 531 S.W.2d 28 (1975). Since appellant failed to rebut this presumption at trial, his separate interest in the funds was extinguished when appellee's name was placed on the deed.

██ The fourth option was granted on September 28, 1989, and exercised on December 2, 1992. The option was for 1000 shares of UST at a purchase price of $13.78 per share. The market price per share on the exercise date was $33.56. Appellant sold

sufficient shares at the market price to pay the commission cost and the option price for the shares. From this option, appellant retained over 300 shares of UST stock. Appellant then sold the UST stock and purchased stock in MSU. The option was premarital property, and the exercise of the option was effected without expending any marital funds. The net gain from the exercise of the option is appellant's separate property because appellant was able to trace the ownership of the MSU stock through the sale of the UST stock. The increase in the market value of $33.56 above the $13.78 option price enabled the appellant to sell at the market price, pay for the option cost and the selling expenses, and use the difference to acquire stocks without using any marital funds to complete the transaction.

### B. Real Estate

The Chancellor ordered the real property to be sold and the proceeds to be divided equally between the parties after payment of the mortgage and the expenses of the sale. Appellant seeks to be reimbursed for monies expended on improving the marital home with monies obtained through the exercise of a premarital stock option. As previously set forth in this opinion, the marital home was deeded in the joint names of the parties. The appellant's expenditure of premarital funds on the marital home is presumed a gift.

Appellant failed to provide evidence to overcome the presumption. Appellant was unable to specify the exact amount he contributed to the remodeling of the home, and he did not produce any documentation to trace the expenditures claimed as premarital money. In Ramsey, the Arkansas Supreme Court held that when property is purchased in the names of both parties, a presumption arises that the party who invests funds in joint property intends a gift to his or her spouse of an equal interest in those funds. This presumption can only be overcome by clear and convincing evidence. Appellant's proof did not overcome the presumption. The Chancellor did not err in requiring that the home be sold and the net proceeds from the sale be divided equally between the parties.

## C. Retirement

Appellant had an employee retirement plan from which benefits were payable to him after he obtained the age of fifty-five. Appellant asserts that the plan had not vested because he could not obtain benefits therefrom until he reached age fifty-five. The Chancellor awarded appellee one-half of the retirement benefits accrued during the marriage. The Chancellor was correct. In *Day v. Day*, 281 Ark. 261, 663 S.W.2d 719 (1984), the Arkansas Supreme Court held that a retirement plan that is vested but payable sometime in the future is a property right that is subject to division.

## D. Savings

Appellant also invested in an employee savings plan. Appellant's employer matched every dollar appellant invested in the plan. Appellee testified that she and appellant decided to invest in appellant's savings plan because her employer's savings plan only matched twenty-five percent of every dollar she invested. Appellant argues that the money contributed by his employer was a gift to him and, therefore, nonmarital property. The Chancellor awarded appellee one-half of the savings benefits contributed by appellant and by appellant's employer during the course of the marriage. Appellant would not have received matching funds had he not been an employee and entitled to the benefits of his employer's savings plan. The matching funds paid by the employer into appellant's savings account are an employee benefit, not a gift.

We reverse and remand in part and affirm in part.

ROBBINS, C.J., and JENNINGS, J., agree.