■Kenneth S. Hixson, Judge, dissenting in part and concurring in part. | T2Where military retirement benefits vest after twenty years of service, it is arguably unfair for the spouse of a military member to be denied retirement benefits when the parties divorce after nineteen years of marriage and the military member continues to serve, becomes vested, and subsequently receives retirement benefits; yet, it is clearly the law. Similarly, in a nonmilitary settings where a-retirement plan vests after.twenty years of employment, it is arguably equally unfair for the spouse of the retirement-plan member to be denied retirement benefits when the parties divorce after nineteen -years of marriage and the plan member continues his or her employment, becomes vested, and subsequently receives retirement benefits; .yet, it'is clearly the law. Here, the trial court and majority have constructed a legal fiction to create .an exception to the generally accepted “vesting” rules for military retirement plans so that the military spouse may receive retirement benefits from a retiremefit plan that does not vest for another four years. In my opinion, any exceptions to the current vesting rules for military retirement plans that were created through binding precedent by our supreme court should be pronounced by either our supreme court or the Department of Defense, but not by our court. We should not create legal fictions in an attempt to atone for perceived unfairness in divisions of military-retirement plans. In this case, the evidence is largely undisputed. Lt. Col. Pelts has served both as a reservist and in the active armed forces. There are two possible retirement plans available hato' Lt. Col. Pelts. One plan is referred to herein as the “reservist” plan; and, the other plan is referred to herein as the active armed-forces plan or the “active” plan. Each plan has its own distinctive qualifications and benefits. The plans have common elements, but they are mutually exclusive. One cannot receive benefits from both the active plan and the reservist plan.[1] Lt. Col. Pelts described the Department of Defense retirement plans as follows in his brief: Emphasizing the different plans, the Congressional Research Service explained:, ‘There are currently three separate but related retirement systems within the [Department of Defense]: one for active duty members, one for reservists, and one for those who become medically disabled and are unable to complete a 20-year military career due to their disability.’ Kristy N. Ka-marck, Military Retirement: Background and Recent Development, 2 ' (April 30, 2015)[.] Separate statutory schemes govern each retirement system. The “reservist” plan promulgated by the U.S. Congress is codified at 10 U.S.C. §§ 12731-12741, and under this plan, benefits cannot commence until the service member reaches the age of sixty. The “active” plan promulgated by the U.S. Congress is codified at 10 U.S.C. §§ 1401-1414, and these benefits become payable immediately upon retirement so long as the service member has reached at -least twenty years of active duty. [ T4It is clear from the evidence that Lt. Col. Pelts is currently vested in the reservist plan; therefore, the reservist plan is marital property. It is equally clear that because .Lt. Col. Pelts has only sixteen years of active duty, he is not vested in the active plan, and he cannot become vested unless, and until, he serves another four years as defined by the active plan; therefore, the active plan is not marital property. The evidence also showed that the future monthly payments from the active plan are greater than the future monthly payments from the reserve plan. And, while the payments from the active plan commence immediately upon retirement, the payments from the reserve plan do not commence until the military member obtains the age of sixty years. Clearly, the active plan is better than the reservist plan. It pays more; and, it pays sooner. Not only is’ the active plan better, the evidence was also clear that Lt. Col. Pelts plans on serving at least four more years in active service so that he can vest in the active plan and receive the more attractive active-plan benefits. Our law is settled that only vested retirement accounts are considered marital property and subject to division in the event of a divorce. Christopher v. Christopher, 316 Ark. 216, 871 S.W.2d 398 (1994). How, then, can the majority hold that the monthly payments from the nonvested active plan are marital property and subject to division as marital property in a divorce? There appears to be an impassable roadblock. The only way to circumvent the roadblock and to conclude that the nonvested retirement benefits are marital property is to judicially create a fiction. That, I cannot do. 1 ifiThe trial court, and our majority, have created an exception by legal fiction to the “vesting” rule. The trial court stated, “The [appellee] shall receive one-half of the marital portion of the [appellant’s] military retirement, ... and regardless of the form the benefits take, including but not limited to, whether the [appellant] draws an active duty or reserve retirement, as this court finds this is an asset of the marriage which cannot be divested.” (Emphasis added.) The trial court and our majority have concluded that somehow the reservist plan and the active plan are actually one generic cumulative “Military Retirement Plan,” and because Lt. Col. Pelts is vested in one aspect of the plan (the reservist plan), he is vested in the generic cumulative combined plan. I would attempt to define this new'exception as, “If one spouse participates in two retirement plans that have some common elements (one vested and one nonvested), one should really consider those plans aS only one combined plan, and that we should merge the benefits of those plans depending on future events and, further, we should deem that the new ‘merged’ plan is vested despite the fact that part of the new merged plan by its very terms cannot vest for another four years.” Confusing? Apparently not. By way of analogy, assume an employee of Acme Company is in middle management and is eligible for the mid-level-management retirement plan after-ten years of employment. There is also an upper-management retirement plan that has better benefits and vests after twenty years of employment, and the time accrued for the mid-level-management plan also accrues toward the vesting period for the upper-management plan. Further .assume that 11Bthe employee is promoted to upper management and is then divorced after fifteen years of employment. Clearly, because the employee has been employed for ten years, the employee is vested in the mid-management plan, and those plan benefits are marital property subject to division in the divorce. It is equally clear that, although the employee is currently employed in upper management, because the employee has not been employed for twenty years, he is not yet vested in the upper-management plan and those benefits would not be considered marital property. Is there any legal rationale to somehow find that the femployee is vested in the more attractive upper-management plan? That answer is simple and it is “no”; he has not been employed for twenty years. However, if one would apply the majority’s logic, the answer becomes “yes.” Because both plans emanate from the Acme Company, because both plans have common elements,- and because time served for the mid-level plan also accrues for the upper-management plan, then, despite the fact the employee has not been employed for the required ■ twenty years, the -employee would be deemed currently vested in the newly named “Acme Company Combined Retirement Plan” and entitled to the more attractive upper-management -benefits; therefore, it would be marital property. ■ I cannot take such a leap. As set forth above, the reservist plan emanates from 10 U.S.C. §§ 12731 et seq. The active plan emanates from 10 U.S.C. §§ 1401 et seq. The plans pay different amounts; the plans pay at different times. They are not the same plan. This is not a generic cumulative “Military Retirement Plan.” If the United States Congress or the Department of Defense |17want to merge the plans, they certainly have the authority to do so. But, in my opinion, we do not have such authority. Lt. Col. Pelts is vested in the reservist plan. Those benefits are clearly marital property subject to division in the divorce. The reservist plan currently pays $3734 in monthly benefits,[2] and those benefits do not commence for another fourteen years when Lt; Col. Pelts turns sixty years of age in 2028. Mrs; Pelts is entitled to one-half of the marital portion of those benefits. Therefore, in- my. view, Mrs. Pelts should be entitled to begin receiving her share of the monthly reservist benefits from Lt. Col. Pelts in 2028 when Lt. Col. Pelts reaches sixty years of age. There is nothing confusing or complicated about that division of the marital property. Lt. Col. Pelts is not currently vested in the active plan. Lt. Col.' Pelts cannot vest in the active plan unless, and until, he serves in the active armed forces for another four years. If Lt. Col. Pelts were vested, the active plan would currently pay $4300 in monthly'benefits and those benefits would commence immediately upon retirement. Again, clearly a better plan for the members of the active armed services as opposed to members of the reserves. hsNot only does the majority award benefits in a nonvested plan, the majority’s definition of “vesting” is based on events that may, or may not, happen in four years. While Lt. Col. Pelts certainly plans on serving in the active armed forces another four years, his future plans are not sufficient to create vesting. This begs the question: If Lt. Col. Pelts does not continue to serve active duty in years 17, 18, 19 or 20, will Mrs. Pelts still receive her portion of the more attractive active-retirement benefits as marital property? [3] According to the majority opinion, apparently the answer is “yes” because Lt. Col. Pelts is vested in the generic combined “Military Retirement -Plan,” and that plan is marital property. Because the majority opinion is based entirely upon what may, or may not, happen in four years, in my view, the majority opinion is effectively an advisory opinion, the likes of which, heretofore, this court has been reluctant to issue. I would reverse the trial court and find that the reservist plan is marital property subject to division according to the terms of that plan;' and, that the active plan is not marital property because it has not vested and is not subject to division. The trial court should order Lt. Col. Pelts to begin making payments to Mrs. Pelts when he turns sixty years of Image in 2028 in an amount equal ta Mrs. Pelts’s share of the monthly reservist retirement benefit.[4] That is an ascertainable and calculable amount. That is the amount which is marital property. If this holding would cause an inequitable result, then the trial court would have the authority and opportunity, upon remand if so requested, to fashion whatever remedy it saw fit to address any such inequality.[5] Because I disagree with the majority’s holding that Mrs. Pelts is entitled to share in the active-plan retirement benefits should Lt. Col. Pelts ever become eligible for those presently nonyested benefits,.! likewise disagree with the majority’s holding that Lt. Col. Pelts is.required to elect survivor benefits for the active plan. However, I would hold that, in the event Lt. Col. Pelts elects the presently vested reservist-retirement plan, he should be required to elect survivor benefits for that plan if that plan so permits. I concur with the majority’s decision to the extent it declined to address the undeveloped issue regarding survivor benefits for Mrs. Pelts’s retirement plan. ' For these reasons, I dissent in part and concur in part. . One would presume that-the reservist-plan monthly benefit will increase between now and 2028 when the payment would com;mence. Mrs. Pelts would be entitled to her portion of that increase in value as an enhancement. . Similar arguments attempting to circumvent vesting rules in military retirement plans have been repeatedly made, to this court and the supreme court. The following language has been cited on several occasions: "We agree with the chancellor. The proof is that . Durham will not be entitled to a pension.until he has served for at least 20 years. Until then, unlike the professor in Day v. Day, 281 Ark. 261, 663 S.W.2d 719 (1984), Major Durham has ho vested right that must- be recognized as marital property. He is employed by the United States; so Congress could at any time change his retirement plan or abolish it.” Durham v. Durham, 289 Ark. 3, 5, 708 S.W.2d 618, 619 (1986). . See footnote 1. . However, the trial court could not award alimony or an unequal division of property based on the amount of benefits in the active plan because the active plan is not marital property. See Holaway v. Holaway, 70 Ark. App. 240, 16 S.W.3d 302 (2000).